

3
4
5
6
7
8
9
:
;
32
33
34
35
36
37
38
39
3:
3;
42
43
44
45
46

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

RCVTKEM NGQP CTF VKGTP G[ . '"            Ecug P q0

            Rrckpvkhh            **NOTICE OF REMOVAL**

    x0'

ECTTKPI VQP O QTVICIG UGTXKEGU.
NNE=C\ VGE HQT GENQUWTG
EQTRQTCVKQP QH YCUJKPI VQP .cpf
VJG DCPM QH PGY [QTM OGNNQP
HIMIC I VJG DCPM QH PGY [QTM CU
VTWUVGG HQT VIGI KUVGTGF JQNFGTU
QH EYCDU. RPG0CUUGV DCEMGF
EGTVKHKECVGU UGTKGU 4226/7.

            F ghgpf cpvu0

**TO THE CLERK OF THE DISTRICT COURT, TO ALL PARTIES, AND TO**

**THEIR RESPECTIVE ATTORNEYS OF RECORD, IF ANY:**

Rwtuwcpv vq 4: WUE0 1441 3553 cpf 3663. f ghgpf cpv Ecttkpi vqp O qtvi ci g Ugtxkegu.

NNE ('õEcttkpi vqpö+. ykj qwv ckmkpi f ghgpugu qh ncem qh uwdlgev o cwgt qt r gtuqpcn

lwtkuf kevkqp. ko r tqr gt xgpwg. kpuwhhkekgpe{ qh ugtxkeg qh r tqeguu. hcknwtg vq uvcvg c encko  wr qp

y j kej  tgnkgh o c{ dg i tcpvgf. qt cp{ qvj gt xcnkf  f ghgpug. j gtgd{ tgo qxg  vj ku  cevkqp  htqo  vj g

Uwr gtkqt  Eqwtv qh Y cuj kpi vqp. Eqwpv{ qh Mkpi  ö vj g  tg  kv  ku r tgugpvn{ r gp f kpi  ö vq  vj ku  Wpkvgf

P QVKEG QH TGO QXCN 6 Rci g 3

Y tki j v 'Hkpm  {'( \ cm'NNR
834 U0Nwekf U0 Uwkg 522
Ugcwg. Y C : 32
*428+ ; 68/: 32

3   Uucvgu'F kuvtkev'Eqwtv'hqt'jg'Y gusgtp'F kuvtkev'qh'Y cujkpi vqp0Cu'i tqwpfu'hqt'jku'tgo qxcn"

4   Ecttkpi vqp'cuugtvu'jg'hqmqy kpi <

## THE ACTION BEING REMOVED

6   30   Qp'Lwn{'39.'4242.'Rcvtkeml'Ngqpctf 'Vkgtpg{ {'"%õRnckpvkhhö+'hkngf 'c'ncy uwkv'kp'jg'

7   Mkpi 'Eqwpv{.'Y cujkpi vqp'Uwr gtkqt'Eqwtv'gpvkngf *Patrick Leonard Tierney vs. Carrington*

8   *Mortgage Services, LLC and Aztec Foreclosure Corporation of Washington*.'Ecug'Pq042/4/

9   33546/9/UGC'"%jg'õCevkqpö0"

:   40   Qp'qr'cdqwv'Lwn{'42.'4242.'Ecttkpi vqp'y cu'ugtxgf'y kj 'c'eqr {'qh'jg'Uwo o qpu."

;   Eqo r nckpv.'O qvkqp'hqt'Vgo r qtct{'Tguvtckpkpi 'Qtf gt'"%õO O qvkqpö+.'F gentctcvkqpu'kp'Uwrr qtv'qh'

32  jg'O qvkqp'cpf 'c'Rtqr qugf'Qtf gt'"%eqnngevkxgn{ 'õRcemci gö+0'C'eqr {'qh'jg'Eqo r nckpv'ku'

33  cwcej gf'cu'Gzj kdkv'õCö.'y twuwcpv'vq'4: 'WUE'õÊ'3668'c+'cpf 'Nqecn'Ekxkn'Twng'323'd+3+0'C"

34  eqr {'qh'jg'Rcemci g'ku'cwcej gf'j gtgvq'cu'Gzj kdkv'õD0"

35  50   Qp'Lwn{'45.'4242.'hqmqy kpi 'c'j gctkpi 'qp'jg'O qvkqp.'jg'Eqwtv'gpvgtgf'cp'Qtf gt'

36  i tcpvkpi 'jg'Vgo r qtct{'Tguvtckpkpi 'Qtf gt.'cpf 'tgswktkpi 'r c{o gpv'qh'hwpfu'vq'jg'uwr gtkqt'

37  eqwtv'tgi kuvt{0C'vtwg'cpf 'eqttgev'eqr {'qh'jg'qtf gt'ku'cwcej gf'j gtgvq'cu'Gzj kdkv'E0'

38  60   Qp'Cwi wuv'34.'4242'Rnckpvkhh'hkngf 'c'O qvkqp'hqt'Rtgnko kpct{'Kplwpevkqp'y kj 'c'

39  j gctkpi 'f cvg'qh'Cwi wuv'42.'42420'C'vtwg'cpf 'eqttgev'eqr {'qh'jg'o qvkqp'hqt'r tgnko kpct{'

3:  kplwpevkqp.'y kj qwv'uwr r qtvkpi 'f genctcvkqpu'cpf 'gzj kdkvu.'ku'cwcej gf'j gtgvq'cu'Gzj kdkv'F 0"'

3;  70   Qp'Cwi wuv'35.'4242.'Rnckpvkhh'hkngf 'c'Hktuv'Co gpf gf 'Eqo r nckpv'cff kpi 'Vj g'Dcpm'

42  qh'Pgy ']'qtm'O gmqp'HMIMC I'Vj g'Dcpm'qh'Pgy ']'qtm'cu'Vtwuvgg'hqt'Tgi kuvgtgf 'J qnf gtu'qh'

43  EY CDU.'Kpe0'Ccugv'Dcemgf'Egtvkhkecvgu'Ugtkgu'4226/7'"%õDQP[ ö+'cu'c'f ghgpf cpv'cpf 'cff kpi "

45  """""""""""""""""""""""""""""""""""""""""

46  ³'Vj gtg'ctg'xqmqu kpqwu'F genctcvkqpu'cpf 'gzj kdkvu'y cv'y gtg'hkngf 'y kj 'jg'o qvkqp.'cpf 'jg'y kmdg'r tqxkf gf 'y kj 'jg'
    xgtkhkecvkqp'qh'uncui'eqwtv'tgqtvf u0

ugxgtcn'cff kkqpcn'enclo u0'C'tvwg'cpf'eqttgev'eqr{ 'qh'\j g'Hktuv'Co gpf gf'Eqo r mlpv'ku'cwcej gf

j gtgvq'cu'Gzj kdkv'G0'

80    F ghgpf cpv'C{ |gg'Hqtgenquwtg'Eqtr qtcvkqp'qh'Y cuj kpi vqp'ku'\j g'qpn{'qyj gt'nqy p

f ghgpf cpv'vq'dg'ugtxgf 'kp'\j g'Cevkqp. 'cpf 'Ecttkpi vqp'j cu'qdvckpgf 'j jki kt'eqpugpv'vq'tgo qxg'\j ku'

o cwgt0'F ghgpf cpv'DQP[ 'y cu'lwu'cff cf'cu'c'f ghgpf cpv'tgegpvn{ 'cpf 'Ecttkpi vqp'f qgu'pqv'

dgnkgxg'kv'j cu'dggp'ugtxgf '{gv0'

90    C'eqr{'qh'\j g'eqo r ngvg'uncvg'eqwtv'tgeqtf 'ku'cwcej gf '\q'\j g'Xgtkhkecvkqp'qh'Uvcvg

Eqwtv'Tgeqtf u.'y j kej 'uj cnl'dg'hkngf 'uwdugs wgpv'\q'\j ku'P qvkeg'qh'Tgo qxcn'r wtuwcpv'\q'Nqecn'

EkxknTwg'323*e+0'

: 0    Ecttkpi vqp'y kml'r tqo r vn{ 'hkng'c'eqr{'qh'\j ku'P qvkeg'qh'Tgo qxcn'y kj 'vj g'Engtm'qh'

vj g'Mkpi 'Eqwpv{ 'Uwr gtkqt'Eqwtv'cpf 'ugtxg'vj g'uco g'wr qp'cml'r ctvkgu.'cu'tgs wktgf 'd{ '4: 'WUE0È

3668*c+0'

## REMOVAL BASED UPON FEDERAL QUESTION

; 0    Vj g'Cevkqp'o c{ 'dg'tgo qxgf '\q'\j ku'Wpkdgf 'Uvcvgu'F kuvtkev'Eqwtv'kp'ceeqtf cpeg

y kj '4: 'WUE0ÈÈ'3553'cpf '3663'dgecwug'\j ku'F kuvtkev'Eqwtv'j cu'qtki kpcn'twtuf kevkqp'qxgt'\j g'

Cevkqp'qp'\j g'dcuku'qh'hgf gtcn's wguvkqp0'Tgo qxcn'ku'r tqr gt'kh'cp'cevkqp'kpenwf gu'c'enclo 

õctkukpi 'wpf gt'\j g'Eqpukwwkqp.'ncy u. 'qt'vtgcvkgu'qh'\j g'Wpkbgf 'Uvcvguö'cpf 'y qwf 'lnkm'dg'

tgo qxcdng'gxgp'kh'gzenwfkpi 'c'enclo 'pqv'y kj kp'\j g'qtki kpcn'qt'uwrr ngo gpvcn'twtkuf kevkqp'qh'\j g'

f kuvtkev'eqwtv0'4: 'WUE0È'3663*e+*3+0'Cv'ngcuv'*one* enclo 'cmgi gf 'kp'\j g'eqo r mlpv'o wuv'ctkug'

wpf gt'hgf gtcn'ncy 0'*Ultramar Am. Ltd. v. Dwelle.*'.'22'H09f '3634.'3635'*;yj 'Ekt03; ; 2+0'

320   Vj g'Cevkqpou'eqo r mlpv'uncvgu'\j g'hqmmy kpi 'enclo u'dcugf 'wr qp'hgf gtcn'uncwwgu. '

kp'cff kkqp'\q'qyj gtu-

*3+'Vtwj 'kp'Ngpf kpi 'Cev.'34'WUE'È3823'*õVKNC÷+='4+'Hgf gtcn'F gdv'Eqmgevkqp
Rtcevkegu'Cev.'37'WUE'È38; 4'gv'ugs 0'*õHF ERC÷+='5+'Tgcn'Guvcvg'Ugwno gpv'Rtqegf wtgu'

3
4

Cev."34"WUE"È4827'gv\ugs 0*õTGURCö±¨6+'Hckt'Etgf kv'Tgr qtvkpi "Cev."37"WUE"È38: 3'gv'
ugs 0*õHT ECö±¨cpf '¨8+'Gs wcri'Etgf kv'Qr r qtwpkw{'Cev."34"WUE"È3872"õHEQCö±"

Gzj kdkv'C. 'Rci g'50'

5

330    Rwtuwcpv'q'4: "WUUE0È'3668*c±.'Ecttkpi vqp'j gtgd{'hkngu'\j ku'P qvkec'kp'\j g'
F kuvtkev'Eqwtv'qh'\j g'Wpkvgf 'Ucvgu'hqt'\j g'f kuvtkev'cpf 'f kxkukqp'\y kj kp'y j kej "\j g'Cevkqp'ku'
r gpf kpi 0'

6
7
8

## TIMELINESS OF REMOVAL

9

340    C''pqvkec'qh'tgo qxcri'o wuv'dg'hkngf 'y kj kp'\j kt v{ '*52+'f c{ u'chvgt 'tgegkr v'qh'\j g'
kpkkkcri'r ngcf kpi .'\j tqwi j '¨ougtxkeg'qr 'qvj gty kug0'''See. '4: "WUUE0È'3668*d+0'''

:
;

350    J tg."\j g'ncy uwkv'y cu'hkngf "kp'\ncvg'eqwtv'qp'Lwn{ '39.'42420'Ecttkpi vqp'tgegkxgf 'c'
eqr {'qh'\j g'Rcenci g'qp'Lwn{ '42."42420Vj g'tgo qxcri'ku'\ko gn{0'

32
33

## CONCLUSION"

34

Vj ku'P qvkec'qh'Tgo qxcri'ku'i pdgf 'r wtuwcpv'q'Hgf gtcri'Twng'qh'EkxkriRtqegf wtg'330."See"
also 4: "WUUE0È'3668*c+0'D{'\j ku'P qvkec'qh'Tgo qxcri'cpf '\j g'cuuqekcvgf 'cwcej o gpu."
Ecttkpi vqp'f qgu'pqv'y cikxg'cp{'qdlgevkqpu'kv'o c{'j cxg'cu'\q'ugtxkel. 'lwtkuf kevkqp'qr 'xgpwg. 'qr '
cp{'qyj gt'f ghgpugu'qr 'qdlgevkqpu'kv'o c{'j cxg'\q'\j ku'cevkqp0Ecttkpi vqp'kpvgpf u'pq'cf o kuukqp'qh'
hcev.'ncy 'qr 'kkcdkkv{'d{'\j ku'P qvkec.'cpf 'gzr tguun{'tgugtxg'crri'f ghgpugu.'o qvkqpu'cpf 'qr r ngcu0'

35
36
37
38

Y J GT GHQT G.'\j g'Cevkqp'ku'j gtgd{'tgo qxgf 'htqm 'vj g'Ucvg'Eqwtv'q'\j ku'Wpkvgf 'Ucvgu'
F kuvtkev'Eqwtv.'hqt'\j g'Y gutgtp'F kuvtkev'qh'Y cuj kpi vqp.'cpf 'Ecttkpi vqp'r tc{u'\j cv'\j ku'F kuvtkev'
Eqwtv'r tqeggf .'r wtuwcpv'q'4: "WUUE0È'3663.'cu'y gml'cu'cp{'qvj gt'tgngxcpv'cpf 'cr r ríecdng'ncy .'
cu'kh'\j ku'Cevkqp'j cf 'dggp'qtikinkpcm{'hkngf 'kp'\j ku'F kuvtkev'Eqwtv0'

39
3:

F CVGF <'Cwi wuv'3: .'4242'''     "    "    "    "Y TKI J V'HIP NC[ '''( '\ CM.'NNR"

3;
42

_/s/ Synova M. L. Edwards_____" 
U{pqxc'O 0N0Gf y ctf u.'Y UDC'¨%65285" 
Cwqtpg{u'hqt'Ecttkpi vqp" 
"

43
44
45
46

3

<u>EGTVKHKECVG"QH'UGTXKEG"</u>

4   Keco "go r nq{gf "kp"vj g'Eqwpv{"qh'Mkpi ."Uvcvg"qh"Y cuj kpi vqp0"Kco "qxgt"vj g'ci g"qh"gki j vggp"

*3: +"cpf"pqv'c'r ctv{"vq"vj g"y kej kp"cevkqp0O { "dwukpguu'cf f tguu"ku"834"U0'Nwekrg"Uv0'Uwkg"522."

5   Ugcwng."Y C";: 32: 0'

6   Qp'Cwi wuv'3: ."4242, Kugtxgf "vj g'hqtgi qkpi "f qewo gpwu'f guetkdgf "cu"öP qvkeg"qh'T go qxcnö"

qp"vj g'hqnqy kpi "kpf kxkf wcn'cu'pqvgf "dgnqy <"

7

Gtkec"C0U0'Nqwku"

8   Etgcr 'Ngi cn"

33; 22'P G'Hktuv'Uvggv'%522I "

9   Dgmgxwg."Y C";: 227"

<i>Attorneys for Plaintiff</i>

;   Lco gu"Etchv"

"Lcpgy c{"Ncy "Hkto ."NNC"

"36; ; "UG"Vcej "Egpvgt'Rnceg."Uwkg"477"

32   "Xcpeqwxgt."Y C";: 8: 5"

<i>Attorneys for Defendant Aztec Foreclosure</i>

33   """]Z_"  *D[ "O C KN+"Kecuwugf "uwej "gpxgnqrg"g'y kej "r qunci g'vj etgqp'hwvn{"r tgr ckf "vq"dg"r ncegf "kp"vj g"

34   Wpkgf "Ucvgu'o ckn'cv'Ucwng."Y C0'Kco "tgcf kn{"hco krct"y kej "vj g'hkto öu'dwukpguu'r tacevkeg"

hqt"eqmgevkqp'cpf "r tqeguukpi "qh'eqttgur qpf gpeg"hqt"o ckrkpi "y kej "vj g"WU0'Rquvcn'Ugtxkeg"

35   r wtuwcpv'vq"y kej "r tcevkeg"vj g'eqttgur qpf gpeg"ku"f gr qukegf "y kej "vj g'WU0'Rquvcn'Ugtxkeg"

vj g"uco g'f c{"kp"vj g'qtf kpct{"eqwtug"qh'dwukpguu0

36   """]Z_""  *D[ "GNGEVTQP KE'UGTXKEG+"Rwtuwcpv'vq"EO IGEH'U{uvgo ."tgi kuttcvkqp'cu'c"EO IGEH'

37   wugt"eqpukwuwgu'eqpugpv'vq"gngevtqpke'ugtxkeg"vj tqwi j "vj g'Eqwtvuu'vtcpuo kuukqp'hcekrkktgu0"

Vj g'Eqwtvuu'EO IGEH'U{uvgo u'ugpf u'wgpf'cp"g'o ckl'pqwhkecvkqp"qh'vj g'hknkpi "vq"vj g'r ctvkgu'cpf "

38   eqwpugnqh'tgeqtf "hkrwgf "cdqxg'y j q'ctg'tgi kuggtgf "y kej "vj g'Eqwtvuu'GE IGEH'U{ugo 0

39   """]Z_"  *HGF GTCN+"Kf gnctg"vj cv'Kco "go r nq{gf "kp'vj g'qhhkeg"qh'c'o go dgt"qh'vj g'dct"qh'ku"

eqwtv'cv'y j qug'f ktgevkqp'vj g'ugtxkeg"y cu'o cf g0"

3:   Kf gnctg"wpf gt'r gpcn{"qh'r gtlwt{"qh'vj g'ncy u'qh'vj g'Wpkgf "Ucvgu'cv'vj g'hqtgi qkpi "ku"

3;   ttwg'cpf "eqttgev0'Gzgewgf "qp'Cwi wuv'3: ."4242."cv'Ugcwng."Y C0'

42   F cgf <'Cwi wuv'3: ."42420'

43                      <u>_/s/Karina Khamidullina</u>aa"

"  "  "  "  "  "  "  "  "  "  "  "  "   Mctkpc"Mj co kf wnkpc"

44

45

46

# EXHIBIT A

1

ØŠÒÖ
ŒŒŠŘŴŠŘÏŘÍŘ ŔÉ
ŚŒŎ Ö Ú Ŵ VÝ
ÙŴÚ Ö Œ Ú Ŵ Ú VŠ Ö ÜŠ
ÒŒŠÒÖ
Ô Œ Ü Ŕ Œ Œ FFHŒ Ã Ú

2

3

4

5

6

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

7

8

PATRICK LEONARD TIERNEY;

CASE NO.

9

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

10

                          Plaintiff,

11

vs.

12

CARRINGTON MORTGAGE SERVICES,
LLC, and AZTEC FORECLOSURE
CORPORATION OF WASHINGTON

13

14

                          Defendants.

15

16

        Plaintiff alleges as follows:

17

**NATURE OF ACTION**

18

        1.        This is an action for legal and injunctive relief and arising out of the wrongful

19

foreclosure of the plaintiff's property in violation of state and federal law, including: Consumer

20

Protection Act, RCW 19.96 et seq. ("CPA"); Deed of Trust Act, RCW 61.24 et seq. ("DTA");

21

Truth in Lending Act 12 USC §1601 ("TILA"); Federal Debt Collection Practices Act, 15 USC

22

§1692 et seq. ("FDCPA"); Real Estate Settlement Procedures Act, 12 USC §2605 et seq.

23

("RESPA"); Fair Credit Reporting Act, 15 USC §1681 et seq. ("FCRA"); and Equal Credit

24

Opportunity Act, 12 USC §1640; ("FCOA").

25

26

**PARTIES VENUE AND JURISDICTION**

2.      Plaintiff Patrick Leonard Tierney ("Tierney") is an individual who resides in King County and owns the property located at 28023 140th Place NE, Duvall Washington.   The property is Tierney's sole residence and he has lived there continually and uninterrupted since its purchase in 1988.

3.      Defendant Carrington Mortgage Services ("Carrington") is a foreign limited liability company that does business in Washington.  Carrington's principal office is located in Anaheim, California.  Carrington's agent for service of process is CT Corporation System, 711 Capitol Way South, #204, Olympia, Washington, 98501.

4.      Defendant Aztec Foreclosure Corporation of Washington is a Washington corporation.  Aztec's principal office in is Vancouver, Washington.  Aztec's agent for service of process is LLC Management Services LLC, 145 Third Ave S, # 200, EDMONDS, WA, 98020-3593.

5.      This court has original and concurrent jurisdiction over the parties and claims in this action and venue is proper in this court as the plaintiff resides here and the acts complained of took place in King County.

**FACTUAL ALLEGATIONS**

6.      On March 5, 2004, Tierney and his wife, Chris Tierney, refinanced the mortgage on their Duvall home with a $208,000 loan at 6.8% from MILA, Inc.  The loan provided for monthly payments in the amount of $1,356.00.   Carrington subsequently purchased the MILA loan and the Tierneys thereafter sent their monthly payments to Carrington.   For almost 15 years, the Tierneys made regular scheduled monthly payments on the Carrington loan.   Then, a series of tragic events unfolded that impacted their ability to remain current on the loan.

- 2

7.      In May 2018, Tierney was diagnosed with advanced non-Hodgkin's lymphoma. He underwent immediate and aggressive treatment.  While the treatment was successful, it left the Tierneys with uncovered medical expenses.  In February 2019, while still in follow-up cancer care, Tierney was terminated from his employment, without notice or warning.  Shortly prior to Tierney's termination, Chris Tierney was advised that her employer was moving out of state and that her position would be eliminated in midyear.   Both commenced the search for new jobs. However, Tierney's job search efforts were halted in May 2019, when he suffered serious injury to his right knee as a result of a chainsaw accident.  He underwent emergency surgery that left him unable to walk for three months.   In April 2019, while Tierney was still recovering from the accident and subsequent surgery, Chris Tierney died suddenly.

8.      Despite the horrors of the prior year, as of April 2019, the Carrington loan was only two months delinquent.  Moreover, the equity in the Duvall property is significantly in excess of Carrington's lien.  Tierney advised Carrington of Chris Tierney's death as well as the circumstances that resulted in his financial situation and requested mortgage assistance. Carrington invited Tierney to complete the Request for Mortgage Assistance ("RMA") application on the Carrington website.  Tierney completed the application and submitted it to Carrington on May 31, 2019, along with supporting documentation.

9.      Under state and federal law, Carrington has a duty to conduct a good faith assessment of Tierney's RMA and attempt to work out a resolution that would avoid foreclosure. Carrington not only failed to act in good faith, it took affirmative action undermine Tierney's RMA by mishandling and delaying the processing his application for the purpose of forcing him into a foreclosure so that it could take ownership of home.  Carrington falsified information on

- 3

which it purportedly relied in denying Tierney's RMA and affirmatively misrepresented that

Tierney had voluntarily elected to proceed with a "home liquidation."

10.     Carrington appointed Aztec as the foreclosure trustee.  Aztec served Tierney with

Notice of Foreclosure and Notice of Trustee's sale, which is currently scheduled for July 24,

2020.  Tierney provided Aztec with evidence of Carrington's bad faith conduct, and improper

denial of his RMA and urged it to continue the auction.  Aztec refuses to continue the auction.

11.     As of the date of this complaint, Washington State is subject to COVID-19

restrictions on public gatherings.  These restrictions were further tightened on July 16, 2020,

when Governor Jay Insee and the Secretary of Health Johns Weisman issued an executive order

that precludes social gatherings of more than ten people and prohibits all live entertainment, both

indoor and outdoor.   Even before the Governor announced the tightened restrictions, the

Department of Financial Institutions issued the following guidance on June 18, 2020:

> As the COVID-19 virus has continued to ravage our communities, the economic
> impact on consumers is considerable. . .
>
> As our prior guidance described, Fannie Mae, Freddi Mac and HUD have all
> suspended foreclosures on single-family mortgages backed by those entitles. . .
>
> Services are urged to take reasonable and prudent actions through September 30,
> 2020, subject to the requirements of any related guarantees or insurance policies,
> to support those adversely impacted mortgagors by. . . *Rqwr qp kpi 'hqt genqumt gu*
> (emphasis added). . .
>
> The Department believes that continuing reasonable and prudent efforts to assist
> mortgagors under these unusual and extreme circumstances is in the public
> interest. . .

12.     Tierney provided Aztec with a copy of the DFI guidance and urged Aztec to

continue the foreclosure to date on which the restrictions will not limit the number of viable

bidders.  Aztec refused.  In an email from Vice President, Inna Zagaiya, Aztec stated:

- 4

The guidance provided by the state of Washington does not prohibit foreclosure sales nor is the sale prohibited by any of the Governor's re-opening provisions at this time.

13.     As a result of defendants' refusal to continue the auction, Tierney was forced to file this action so that he could obtain a TRO to prevent the wrongful foreclosure of his home.

## FIRST CAUSE OF ACTION
(Violation of Washington CPA)

14.     Plaintiff repeats, realleges and incorporates herein by reference the allegations of paragraphs 1 through 13, of this complaint as though set forth at length herein.

15.     Defendants handling of Tierney's RMA application and their prosecution of the foreclosure proceeding was in violation of state and federal laws and regulations, including those set forth in paragraph one.  Such conduct constitutes unfair and deceptive acts in violation of the CPA.  The consumer protections set forth in these statutes as well as the COVID-19 restrictions are designed for the public benefit and to protect the public welfare.

16.     As a direct and proximate  result of wrongful acts of the defendants, Tierney has suffered general and special damages and faces the imminent loss of the home in which he has lived for the last 32 years, along with all of his equity in the home.

## SECOND CAUSE OF ACTION
(Breach of Fiduciary Duty)

17.     Plaintiff repeats, realleges and incorporates herein by reference the allegations of paragraphs 1-13, and 15-16, of this complaint as though set forth at length herein.

18.     As the foreclosure trustee, Aztec has a fiduciary duty to Tierney to take reasonable and appropriate steps to avoid squandering his interest in the property.   Due to its very nature, the value paid for property at auction is directly tied to the number of bidders present.  The more bidders, the higher the bidding.  Here, even without the recent increased

- 5

formal restriction on public gatherings, the majority of citizens are complying with the "Stay Home Stay Healthy" mandate.  By insisting on a July 24, 2020 auction, Aztec has not only failed to protect Tierney's interest in the property, it is facilitating a sale that will most almost certainly extinguish all of his equity.   Aztec further breached it duty to Tierney by failing to review and consider the evidence that Carrington is pursuing this foreclosure in bad faith and based upon falsified information.

19.     Carrington, as the servicer had a duty to make a good faith attempt to reach a resolution with Tierney that would avoid foreclosure of his home.  Carrington breached that duty and made no attempt whatsoever to offer Tierney mortgage assistance.  Rather, Carrington delayed the review and then denied Tierney's RMA so that it could acquire ownership of a prime half acre residential lot that holds the potential for subdivision.

20.     As a direct and proximate  result of wrongful acts of the defendants, Tierney has suffered general and special damages and faces the imminent loss of the home in which he has lived for the last 32 years, along with all of his equity.

### THIRD CAUSE OF ACTION
(Negligence)

21.     Plaintiff repeats, realleges and incorporates herein by reference the allegations of paragraphs 1-13, 15-16, and 18-20 of this complaint as though set forth at length herein.

22.     Carrington and Aztec have a duty to use reasonable care when assessing a borrower's mortgage assistance options and to make a good faith attempt to avoid foreclosure. Defendants breached these duties by taking affirmative action that undermined Tierney's RMA in order to force his home into foreclosure.

- 6

23.      As a direct and proximate result of wrongful acts of the defendants, Tierney has suffered general and special damages and faces the imminent loss of the home in which he has lived for the last 32 years, along with all of his equity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.   An injunction precluding the foreclosure sale of the Duvall property;

2.   Judgment in favor of Tierney and against Carrington and Aztec on all causes of action set forth herein;

3.   An award of general and special damages, in an amount to be proven at trial;

4.   An award of punitive damages, treble damages and statutory penalties as permitted by law;

5.   An award of attorneys' fees and costs as permitted law, including but not limited to RCW 19.86.090; 12 USC §2605; 12 USC §2607; 15 USC §1691e;  15 USC §1692k; 12 USC §1681n.

6.   An award of pre-judgment interest; and

7.   All such further relief as the court deems just and proper.

        Dated:  July 17, 2020              CREER LEGAL


        By: _____
              Erica A. St. Louis
              WSBA # 28793
              Counsel for Platiniff

- 7

# EXHIBIT B

1
2
3
4
5
6
7

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

8  PATRICK LEONARD TIERNEY;                    CASE NO.  20-2-11324-7-SEA

9                                              SUMMONS

10                         Plaintiff,

11  vs.

12  CARRINGTON MORTGAGE SERVICES,
    LLC, and AZTEC FORECLOSURE
13  CORPORATION OF WASHINGTON

14                         Defendants.

15

16  TO:  CARRINGTON MORTGAGE SERVICES, LLC, and AZTEC FORECLOSURE
    CORPORATION OF WASHINGTON

17

18        A lawsuit has been started against you in the above-entitled Court by the above-named

19  Plaintiff.  Plaintiff's claims are stated in the written Complaint, a copy of which is served upon

20  you with this Summons.

21        In order to defend against this lawsuit, you must respond to the Complaint by stating your

22  defense in writing, and serve a copy upon the undersigned counsel for the Plaintiff within 20

23  days after the service of this Summons, excluding the day of service, if served within the State of

24  Washington (or within 60 days after service of this Summons, if served outside the State of

25  Washington), or a default judgment may be entered against you without notice. A default

26

SUMMONS - 1

CREER LEGAL
11900 NE FIRST STREET #300G
BELLEVUE, WA 98005
T:(425) 404-2399 F: (425) 406-6898

judgment is one where the Plaintiffs is entitled to what the Plaintiff asks for because you have not responded. If you serve a notice of appearance on the undersigned, you are entitled to notice before a default judgment may be entered.

You may demand that the Plaintiff file this lawsuit with the Court, it has not already been filed. If you do so, the demand must be in writing and must be served upon the undersigned counsel Plaintiff. Within fourteen (14) days after you serve the demand, the Plaintiffs must file this lawsuit with the Court, or the service on you of this Summons and Complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This Summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

Dated: July 20, 2020          CREER LEGAL

By: _____
          Erica A. St. Louis
          WSBA # 28793
          Counsel for Platiniff

- 2

1
2
3
4
5
6

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

7

8    PATRICK LEONARD TIERNEY;                    CASE NO.  20-2-11324-7-SEA

9                                                MOTION FOR TEMPORARY
                                                 RESTRAINING ORDER
10                            Plaintiff,
     vs.
11

12   CARRINGTON MORTGAGE SERVICES,
     LLC, and AZTEC FORECLOSURE
13   CORPORATION OF WASHINGTON

14                            Defendants.

15

16                        **I.    RELIEF REQUESTED**

17        Plaintiff Patrick Leonard Tierney hereby moves this court for a temporary restraining

18   order to prevent a July 24, 2020 non-judicial foreclosure sale of property located at 28023 NE

19   140th Pl, Duvall, WA 98019-8389.

20                       **II.    STATEMENT OF FACTS**

21

22        One March 5, 2004, Patrick Leonard Tierney ("Tierney") and his wife, Chris Tierney

23   borrowed $208,000 at 6.8% from MILA, Inc. pursuant to a balloon note that provided for an

24   April 1, 2019 maturity date.   The note was secured by a deed of trust on their home.  [Exhibits 1

25   and 2].   The loan was thereafter sold to Carrington Mortgage Services LLC ("Carrington").  The

26   Tierneys made regular payments on the loan until March 2019.

MOTION FOR TEMPORARY RESTRAINING
ORDER
- 1

1    In February 2019, Tierney lost his job. [St.Louis Dec. ¶5]  In March, 2019, Tierney's job

2    search efforts were halted when cut his right leg with a chain saw, resulting in emergency

3    surgery and the inability to walk for three months. [St. Louis Dec. ¶ 6].  On April 24, 2019,

4    while Tierney was still recovering from knee surgery, Chris Tierney died suddenly. [St. Louis

5    Dec. ¶ 7; Ex. 3].

6    Chris Tierney handled all of the family finances.  At the time of his wife's passing,

7    Tierney did not know what was owed on the house, the amount of the monthly mortgage

8    payments or even the identity of the mortgage holders. [St. Louis Dec. ¶ 8]

9    Erica St. Louis ("St. Louis") is an attorney and Tierney family friend.  On April 30, 2019,

10   St. Louis called Carrington, advised of Chris Tierney's death and inquired about the status of

11   loan.  At that time Carrington advised that the mortgage was two-months delinquent.  St. Louis

12   advised Carrington that Tierney would likely need mortgage assistance until he could recover

13   from surgery and find new employment. [St. Louis Dec. ¶ 8]  Carrington directed Tierney to

14   complete a Request for Mortgage Assistance ("RMA") application, on the Carrington website.

15   On May 31, 2019, Tierney submitted to Carrington a completed RMA application with

16   supporting documents. [Exhibit 5]  In the six months that followed, Carrington sent Tierney

17   what appeared to be computer generated generic letters, none of which addressed the substances

18   of his RMA and some of which appeared to concern other borrowers.

19   For example, Carrington sent Tierney several letters stating Carrington's commitment to

20   home retention and the various mortgage assistances options available, including loan

21   modification.  The letters were sent before and after Carrington sent Tierney a notice that his

22   particular loan was not amenable to modification.   On another occasion, Carrington stated that it

23   could not proceed with the RMA as Chris Tierney submitted a request to dispose of the house by

24   short sale.  Chris Tierney had been dead almost one year at the time Carrington claims the

25   request was made.  Despite Tierney's unwavering and clearly communicated desire to remain in

26

MOTION FOR TEMPORARY RESTRAINING
ORDER
- 2

his home, Carrington sent Tierney a letter stating that he would receive mortgage assistance on the grounds that he voluntarily "opted out" of the process.

Given the foregoing, on December 3, 2019, St. Louis wrote Carrington, as counsel for Tierney and made a formal demand for mortgage assistance.  [Exhibit 12]  Carrington did not respond.  Rather, three days later it taped a Notice of Foreclosure and Notice of Trustee's Sale to Tierney's front door.  The Notices provided for an April 17, 2020 auction of Tierney's home. [Exhibits 13 and 14].

Thereafter, Randall Lowell ("Lowell") an expert in the area of fairness foreclosures agreed to consult on Tierney's case.   It is Lowell's opinion that the conduct of Carrington and Aztec has been in violation and state and federal law and that a foreclosure now would cause Tierney irreparable harm.  However, Carrington and Aztec have refused to continue the auction pending a resolution of these issues.

A temporary restraining order is necessary to protect Tierney from the irreparable harm that will result if Aztec is permitted to auction the Tierney home to the highest bidder on July 24, 2020.  All notions of justice, equity and fairness mandate an order restraining the sale.

## III.   STATEMENT OF ISSUES

Will irreparable injury result if the July 28, 2020 foreclosure auction is permitted to proceed?

## IV.   EVIDENCE RELIED UPON

This motion is based upon the declarations of Erica A. St. Louis, Randall Lowell, Patrick Leonard Tierney and the exhibits appended thereto.

## V.   AUTHORITY

CR 65 provides for the issuance of a restraining order upon a showing that irreparable injury will result if the objectionable action is not enjoined.  RCW 61.24.130 specifically

MOTION FOR TEMPORARY RESTRAINING ORDER
- 3

governs motions to restrain a non-judicial foreclosure sale and provides even broader grounds for a restraining order and authorizes the court to grant a restraining order "on any proper legal or equitable ground."  RCW 61.24.130(1).  Consistent with the liberal provision for restraining orders, the statute mandates that the Notice of Trustee's Sale contain the following language:

> "Anyone having any objection to the sale *on any ground whatsoever* will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130 (emphasis added)." RCW 61.24.040(1)(f)(IX).

Because the non-judicial foreclosure process happens without the supervision of a court, lenders are required to strictly comply with the statutory safeguards and courts must strictly construe the statutory provides in favor of the borrower's favor.  *Amresco Independence Funding, Inc. v. SPS Props., LLC*, 129 Wn.App. 532, 536-37 (2005).  Trustees are governed by an even higher standard in these situations.  As explained by the Washington Supreme Court:

> The trustee is bound by his office to present the sale under every possible advantage to the debtor as well as to the creditor. He is bound to use not only good faith but also every requisite degree of diligence in conducting the sale and to attend equally to the interest of the debtor and creditor alike. *Cox v. Helenius*, 103 Wn.2d 383, 388 (1985)

The defendants' conduct here falls significantly short of these standards and gives rise to the liability alleged in the complaint.  In fact, the evidence suggests that Carrington and Aztec deliberately seek to divest Tierney of his home of 32 years.  The equity in the house is far in excess of Carrington's lien and Tierney was only 60 days in arrears when he reached out for mortgage assistance.  If mortgage assistance is not available on the facts presented here, it is difficult to imagine a scenario that would qualify.   The facts and evidence set forth in the declaration of Erica St. Louis and the opinions contained in the declaration of Randall Lowell reveal that the defendants are not concerned with assisting Tierney in a time of need.  Rather, they view his home a half acre residential lot that is highly marketable to developers

MOTION FOR TEMPORARY RESTRAINING ORDER
- 4

1
2

**VI.  CONCLUSION**

3
    The sole method to enjoin a foreclosure sale is to file an action and obtain a restraining

4
order in compliance with RCW 61.24.130." *EJ F.'Kpe0Dq{rgu.'* 138 Wn.App. 131 (2007).

5
Tierney is prepared to post a bond and/or deposit with the court any amount that the court deems

6
appropriate as a condition for granting a temporary restraining order.   If such an order is not

7
issued, Tierney will suffer irreparable damage in that he will lose his home of 32 years along

8
with all of the equity he has in the property.

9

10
          Dated:  July 17, 2020          CREER LEGAL

11
12
13
14
I certify that this memorandum
contains a total of 1278 words, in
compliance with the 4,200 word limit
set forth in KCLR 7.

By: _____

Erica A. St. Louis
WSBA # 28793
Counsel for Platiniff

15
16
17
18
19
20
21
22
23
24
25
26

MOTION FOR TEMPORARY RESTRAINING
ORDER
- 5

1

2

3

4

5

6

7

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

8

PATRICK LEONARD TIERNEY;

9

10                              Plaintiff,

vs.

11

12   CARRINGTON MORTGAGE SERVICES,
LLC, and AZTEC FORECLOSURE

13   CORPORATION OF WASHINGTON

14                              Defendants.

15

CASE NO.  20-2-11324-7 SEA

DECLARATION OF RANDALL LOWELL
IN SUPPORT OF APPLICATION FOR
TEMPORARY RESTRAINING ORDER

16        I, Randall Lowell, declare as follows:

17   1.  I am over the age of 18 years and competent to testify to the statements made in this

18       declaration. The statements herein are based upon personal knowledge and on 32 years of

19       experience in the mortgage industry.

20

21   2.  In March 2020, I was retained to review the facts and circumstances surrounding the

22       conduct of Carrington Mortgage Services, LLC ("Carrington") and Aztec Foreclosure

23       Corporation of Washington ("Aztec") in connection with plaintiff Patrick Leonard

24       Tierney's ("Tierney") request for mortgage assistance.

25

26

DECLARATION OF RANDALL LOWELL IN SUPPORT
OF TRO - 1

3. I understand that my duty is to help the court to achieve the overriding objective by giving independent assistance by way of objective, unbiased opinion on matters within my expertise, both in preparing reports and giving oral evidence. I understand that this duty overrides any obligation to the party by whom I am engaged or the person who has paid or is liable to pay me. I confirm that I have complied with and will continue to comply with that duty.

4. I confirm that I have not entered into any arrangement where the amount or payment of my fees is in any way dependent on the outcome of the case.

5. I know of no conflict of interest of any kind involving the Parties herein named.

## I.    EXPERT QUALIFICATIONS

6. I am the owner of RVLCS, LLC, a consulting firm serving the mortgage, real estate and loss mitigation industries.  I have been working in these industries for 32 years and have personally attended over 526 foreclosure mediation sessions for homeowners throughout Washington State.

7. I have a comprehensive understanding of Loss Mitigation Programs and Workout Options; Pooling and Servicing Agreements; Servicer Participation Agreements; Servicing Alignment Initiatives; Supplemental Directives; Making Home Affordable; Bulletins; HUD-Mortgagee Letters; GSE and NON-GSE Servicing Standards and Practices; Consumer Protections-Laws-Rules-Regulations; and Federal Registry publications.

DECLARATION OF RANDALL LOWELL IN SUPPORT
OF TRO - 2

8. I have testified on default loss mitigation issues, damage analysis, NPV; Loan Servicing Regulations; Consumer Protections; GSE and Non-GSE programs in state and federal courts in both borrower and lender cases in Washington, California, and Utah.

9. I am a frequent panel speaker at industry events and CLE trainings including those held by the Washington State Department of Financial Institutions, the National Community Reinvestment Coalition, Washington DC-National Conference. I have drafted training materials approved by the Washington State Department of Financial Institutions for continuing education credit hours. I have developed extensive training program for the National Community Reinvestment Coalition under oversight of Housing and Urban Development (HUD including matters relating to: Dodd Frank Act and the Home Ownership Equity Protection Act; Disaster Resiliency and Integration of Housing Counseling; Fair Lending and Fair Housing; and Best Practices in Mortgage Default Analysis-NPV and Workout Solutions.

## II.    RETENTION AND REVIEW

10. On April 1, 2020, Tierney signed an authorization permitting Carrington to speak with me regarding all matters having to do with his loan and request for loss mitigation.

11. On April 3, 2020 I contacted Carrington and spoke with a representative named "Chad." I requested that Carrington continue the foreclosure auction, then scheduled for April 17, 2020 based upon the irregularities in Carrington's handling of Tierney's RMA application (set forth below).  Carrington agreed and the auction was rescheduled to June 19, 2020 so as to permit Carrington time to review Tierney's Request for Mortgage Assistance ("RMA").

DECLARATION OF RANDALL LOWELL IN SUPPORT
OF TRO - 3

12. During the course of my conversation, Chad stated that Carrington records indicate that Tierney had requested a short sale of his home.  I was not aware of any such request and asked Chad for evidence of the request.  Chad referred me to Marilyn as this conversation and request was outside his pay grade. Marilyn stated that she was not authorized to release documents evidencing the request (notwithstanding the April 1, 2020 authorization from Tierney) and refused to email me documents regarding the short sale request.   After pressing the issue further, Marilyn told me that Chris Tierney made the April 3, 2020 request for a short sale.   This would have been impossible as Chris Tierney died a year earlier, on April 24, 2019.

13. Thereafter, I obtained confirmation from Tierney that he did not request a short sale and that he did not want to sell his home. To the contrary, Tierney is determined to take all necessary action in order to remain in his family home.

14. My review of the file reveals that, as of April 2020, Carrington had purportedly denied Tierney's timely Request for Mortgage Assistance (RMA) on four separate occasions and based on four (4) different reasons: 1) Tierney's purported failure to submit all requested documents-*yj kej 'ku'r cvgpvn( 'hcnug'cpf 'o kunjgcf kpi* ; 2) Carrington's inability to modify a "matured loan"- *hqt 'yj kej 'pq't gs wguu'j cu'gxgr 'dggp'o cf g'\q'\jg'Kpxguuqt '\q'\y ckxg." co gpf .'\qt'gzvgpf 'kj ku'hqcp'\gto* ; 3) Tierney's purported election to proceed with a short sale-*hqt 'yj kej 'pq't gs wguu'y cu'o cf g.'\y qwf 'j cxg'kot kr r gf 'cnl'qh'Vkgtpg{ &u'gs wkv{ 'qp'c" j qo g'j'j g 'cu'qy pgf 'ukpeg'3;::.'cpf 'Ecttkri vqp'j cu'hcknkf '\q'rt qxkf g'cp{ 'kwej "cr rnkec kqp*; and 4) Tierney's purported election to "opted out" of the loss mitigation process-*yj ku'wpvko gn{ 'f gpkcn'hgwgt.'rt qf wegf 'd{ 'Ecttkri vqp.'f qgu'pqv't ghngev'cp{"*

DECLARATION OF RANDALL LOWELL IN SUPPORT
OF TRO - 4

CREER LEGAL
11900 NE FIRST STREET #300G
BELLEVUE, WA 98005
T:(425) 404-2399 F: (425) 406-6898

*ugo dnæpeg'qH\t wj ''qt 'i qqf ''tckj ''f gcnkpi u'cpf ''f kw gi ctf u'\j g'RnrkpvkHau'cwgo ru'cv''*

*O qt vi ci g'Cuukvcxpeg.*

15. It is glaringly obvious to me that Carrington has not taken Tierney's request to keep his home seriously and totally disregarded the requirements for proper and timely reviews of the Tierney's request and efforts to avoid an unnecessary foreclosure and submission of an application.[1]  As such, I recommended that Tierney submit a new RMA application and start fresh.  During this, Inna Zagaryia, at Aztec agreed to the continue the July 24 auction date.

16. As of July 14, 2020, I had yet to receive a formal notice of continuance of the auction. As such, I, along with Tierney and his personal attorney, Erica St. Louis, called both Aztec and Carrington.  We were then advised, contrary to my prior communication with Zagaryia, that Carrington and Aztec would NOT agree to postponed auction. I asked how the auction could proceed given that Tierney's newly submitted RMA was still under review. Carrington representative "Jeff" (employee number 5082) advised that, on May 12, 2020, Carrington issued a denial of Tierney's most recent RMA and that the notice was sent to Tierney via email.  Neither Tierney, his counsel, nor I received the denial, by email or otherwise.  We requested that Jeff email to us the May 12, 2020 denial letter.  Jeff stated that he was not authorized to do so.  We were then transferred to another representative, Denna (employee number 9985), who stated that the May 12, 2020 was sent to Leonard via mail, not email.  She also denied our request for an email copy of the May 12, 2020

---

[1] **WHAT IS AN APPLICATION?** An inquiry about loss mitigation, in which the borrower provides no information to the servicer, is not an application. *Dw'lki'j g'dqtt qy gt 'f qgu'r tqxkf g'cp['lqhtq æ vkæp'\j cv'\j qwf 'dg'gxcnwc wf 'c u'r ct v'\j cc'r tquu'' o kki cvkæp'c r r nkec vkæp. '\j g'r tqxkdukæp'qH\j g'lqhtq æ vkæp'kU'cp''c r r nkecvkæp0'* (Emphasis added) 12 C.F.R. part 1024 supplement 1, Comment 41(b)(1) – 3.  27 CONSUMER FINANCIAL PROTECTION BUREAU page 27of 104.

DECLARATION OF RANDALL LOWELL IN SUPPORT
OF TRO - 5

CREER LEGAL
11900 NE FIRST STREET #300G
BELLEVUE, WA 98005
T:(425) 404-2399 F: (425) 406-6898

1
2
3
4
5
6
7
8
9
10

notice.  Both Jeff and Denna stated that they did not have the authority to continue the

auction. We were then transferred to the legal department and spoke with "Stevie" before

being transferred to Jesse Ray. We provided Ray with all of the facts surrounding the

claim and urged him to voluntarily continue the auction so that Tierney would not have to

file this action and seek a TRO. Ray relayed our request to his supervisor who

nonetheless refused the request. We asked to speak directly with the person with

authority to make such a decision and were told that he is unavailable.  Ray stated that he

would email the legal team and advised that we could expect a return call in 24 to 48

hours.   No one called.

11
12
13
14
15
16
17
18
19
20

17. On July 16, 2020 I called Carrington and spoke with Tammy (employee number 4717)

and urged Carrington to continue the July 24 auction.  Tammy stated that she had called

Tierney 18 times and was unable to get ahold of him and that, as a result, Carrington was

unable to continue the auction.  I advised Tammy that both I and Erica St.Louis,

Tierney's personal attorney, are authorized third parties, that we should be copied on all

communication and that we have been communicating with Carrington on Tierney's

behalf.  Notwithstanding a prior written authorization, *qdxckpgf "cv"Ecttkpi xqpau"t gs wgtu"*

*cpf "qp"Ecttkpi xqpau"hqt o .*Tammy advised that Carrington's internal policy prohibits its

agents from communicating with third parties.  I was further advised that the only way I

could have further communications with Carrington on Tierney's behalf would be if

21
22
23

Tierney provided them with a "cease and desist" letter.

24
25
26

18. Despite the purported policy precluding third party communications, Tammy then stated

that Tierney had filed for bankruptcy in 2015 and that such filing affected his RMA.

Tierney has never filed for bankruptcy and I so advised Tammy.  She then reviewed the

DECLARATION OF RANDALL LOWELL IN SUPPORT
OF TRO - 6

1
2
3
4
5
6
7

file further and conceded that she had "made a mistake." She went on to say: "You are able to appeal it if you want. Carrington has declined your request for assistance and you can try our foreclose department." Tammy further advised that the decision to deny Tierney's request was made "at the director level." Tammy declined my request to speak with her supervisor on the grounds that "supervisors and directors don't speak with the public."

8
9
10
11

19. Tierney stated they would have never taken a loan with a balloon payment without assurance that a refinance would be available if and when the loan matured. This promised refinance was never afforded Tierney nor were they provided the requisite two (2) notices of right to cancel per TILA.

### III.  SUMMARY OF FINDINGS

12
13
14
15

20. The conduct of Carrington and Aztec throughout the course of this process has been in flagrant violation of the governing state and federal laws and regulations:

16
17
18
19

   a. Carrington failed to deliver to Tierney valuations used in determination of loss mitigation options and in their pursuit of foreclosure-this practice does not align with protections found under the ECOA as to delivery and notices.

20
21
22
23
24
25

   b. Carrington appears to have been deliberate and methodical in trying to usurp Tierney's  equity in claiming a request was purportedly made by Tierney for a short sale of the family home. This is preposterous as there is a significant equity position in the Tierney home and Carrington's behavior does not align with industry practices, methodology, or loss mitigation solutions/alternatives. A short sale would have stripped Tierney of any equity. This attempted equity grab by

26

DECLARATION OF RANDALL LOWELL IN SUPPORT
OF TRO - 7

1    Carrington has added confusion to an already troubled and distressed homeowner

2    and the entire loss mitigation process.

3    c.   Carrington requested income information from Tierney and was timely provided

4    the same. However, the Carrington's untimely denial(s) issued the same day as

5    the income was submitted, was only seen by myself and counsel on 7/15/2020,

6    and misleadingly stated Tierney's income as "0.0." [St. Louis Dec., Ex. 20, p.1]

7    d.   The simultaneous denial while in active review does not adhere to any industry

8    acceptable practices or standards and creates the appearance of simultaneous

9    processes by Carrington in electing to march to foreclosure without even a proper

10   and or timely review.

11   e.   Carrington's falsely stated in their denial of 04/08/2020 that the "BORROWER

12   OPT OUT". [St. Louis Dec., Ex. 20, p.2]  This is both misleading and deceptive

13   as Tierney had submitted a complete RMA and requested paystubs prior to this

14   date and again on May 14th, 2020 when Carrington knew or should have known

15   they had sent Tierney a second denial two days earlier on 05/12/2020.

16   f.   This simultaneous process undertaken by Carrington requests paystubs from

17   Tierney giving the appearance he is in active review. Carrington knowingly was

18   asking for paystubs after a denial has purportedly been sent and prior to any

19   appeal process having been exhausted. Carrington purposely misled Tierney in

20   advising him to continue to send in information never intending to provide any

21   assistance.

22   21. Defendant has been harmed by Carrington in their predatory lending practices both at the

23   loan origination; unsafe and unsound loan servicing practices; simultaneous attempts to

DECLARATION OF RANDALL LOWELL IN SUPPORT
OF TRO - 8

foreclose during active review and appeal periods for loss mitigation; adding unnecessary fees and costs to the purported balance owing; and in efforts to deprive the Tierney of any equity position.

22. It is my opinion, based upon my years of experience and expertise in the mortgage and loss mitigation industries, that Carrington and Aztec have breached the industry acceptable standards and loss mitigation methodologies, in numerous arrears and to the detrimental reliance of Tierney, including but not limited to:

As to Carrington:

a) Requested Tierney submit RMA's for assistance the entire time (year-long process) failing to be truthful in telling Tierney that Carrington never intended to provide any mortgage relief and or assistance.

b) In not seeking a waiver by the Investor to allow for a modification, despite numerous requests by Tierney through his representatives.

c) Carrington should have been forthright and honest, they were not. Had they told Tierney, and or his representatives, nearly a year earlier that they would never approve any RMA request, Tierney would have taken alternative actions including seeking a HECM Reverse Mortgage, Speaking directly with the Loans Investor, or at the very least selling the home to satisfy Carrington and avoid loss of his substantial equity position.

d)  I believe Carrington's delays were deliberate and designed to deprive Tierney of his equity and that Carrington caused foreseeable delays in requesting numerous RMA's while never intending to offer any alternative to foreclosure.

e)  Requesting income information from Tierney and then deceptively stating in the 04/08/2020 denial that the income used in Carrington's determination was 0.0. [St. Louis Dec., Ex. 23]

f)  This failure to actually look at the income statement provided disrupts any appeal rights of Tierney as income documents were timely submitted to Carrington and the Net Present Value (NPV) inputs used in Carrington's denial were never provided to Tierney.[2]

g)  Stating on 04/03/2020 that the foreclosure sale had been "cancelled" when in fact it had been not and had been postponed.

h)  It was not until 5/12/2020 that Carrington stated in a purportedly delivered denial the following: "We are unable to extend you this offer because your loan is past balloon date…"[3]

i)  I requested on 7/2/2020 Carrington participate in voluntary mediation and they never responded.

j)  Borrower sent several RMA applications well before the scheduled foreclosure sales date. I sent the request for mortgage assistance on 4/2/2020 and Carrington

---

[2] **SEC. 1482. HOME AFFORDABLE MODIFICATION PROGRAM GUIDELINES.**
  (a)  NET PRESENT VALUE INPUT DATA.-… authorized under the Emergency Economic Stabilization Act of 2008 (Public Law 110–343), to require each mortgage servicer participating in such program to provide each borrower under a mortgage whose request for a mortgage modification under the Program is denied with all borrower-related and mortgage-related input data used in any net present value (NPV) analyses performed in connection with the subject mortgage. *Uwej 'kprwi'f cw 'lij cnt'dg'r t qxkf gf 'iq'\ij g'ldqtt qy gt 'i:v'\ij g'\ko g'qJtlnwej 'f gplerti*(Emphasis Added).RL Exhibit 8-Dodd-Frank NPV Inputs pages 1, 828 of 848
  [3]  RL Exhibit 9-Denial 5.20.2020

DECLARATION OF RANDALL LOWELL IN SUPPORT
OF TRO - 10

CREER LEGAL
11900 NE FIRST STREET #300G
BELLEVUE, WA 98005
T:(425) 404-2399 F: (425) 406-6898

failed to respond within the required 5 days per their own email or within the CFPB guidance's as to facially complete, incomplete, complete status.

As to Aztec:

a) In not timely replying to inquires as to the status of the Tierney file. The Trustee stated on 7/16/2020 that, "I apologize for the delay"…

b) In turning a blind eye to guidance's intended to be in the public interest.

"…The Department believes that continuing reasonable and prudent efforts to assist mortgagors under these unusual and extreme circumstances is in the public interest and will help protect against widespread harm to the housing market. These efforts will not be subject to examiner criticism…"

23. A TRO will temporarily stop Carrington from obfuscating the Tierney equity position; allow Tierney to assert and preserve any claims under the Dodd Frank Act as to a "Defense to Foreclosure" under TILA; and allow him time to seek a reverse mortgage and or sell the home.[4]

---

[4] **SEC. 1413. DEFENSE TO FORECLOSURE.** Section 130 of the Truth in Lending Act (15 U.S.C. 1640) is amended by adding at the end the following new subsection: ''(k) DEFENSE TO FORECLOSURE.-''(1) IN GENERAL.—Notwithstanding any other provision of law, when a creditor, assignee, or other holder of a residential mortgage loan or anyone acting on behalf of such creditor, assignee, or holder, initiates a judicial or nonjudicial foreclosure of the residential mortgage loan, or any other action to collect the debt in connection with such loan, a consumer may assert a violation by a creditor of paragraph (1) or (2) of section 129B(c), or of section 129C(a), as a matter of defense by recoupment or set off without regard for the time limit on a private action for damages under subsection (e). ''(2) AMOUNT OF RECOUPMENT OR SETOFF.— ''(A) IN GENERAL.—The amount of recoupment or setoff under paragraph (1) shall equal the amount to which the consumer would be entitled under subsection (a) for damages for a valid claim brought in an original action against the creditor, plus the costs to the consumer of the action, including a reasonable attorney's fee. ''(B) SPECIAL RULE.—Where such judgment is rendered after the expiration of the applicable time limit on a private action for damages under subsection (e), the amount of recoupment or set-off under paragraph (1) derived from damages under subsection (a)(4) shall not exceed the amount to which the consumer would have been entitled under subsection (a)(4) for damages computed up to the day preceding the expiration of the applicable time limit.''… RL Exhibit 6- Dodd Frank TILA SOL Defense to Foreclosure pages 1, 774-775 of 849

DECLARATION OF RANDALL LOWELL IN SUPPORT
OF TRO - 11

I declare, under penalty of perjury, under the laws of the State of Washington, that the foregoing is true and correct.

Disclosures and Disclaimers: This Declaration is prepared based on information presently available to me and is subject to amendment, modification, and/or alteration, upon new information, change in regulation/authority, procedural requirements, facts, testimony, rebuttal testimony that may be provided to me after production of this expert report.

"

RESPECTFULLY SUBMITTED THIS 17nd day of July, 2020



Randall Lowell

Housing Counselor and Expert Consultant

DECLARATION OF RANDALL LOWELL IN SUPPORT
OF TRO - 12

CREER LEGAL
11900 NE FIRST STREET #300G
BELLEVUE, WA 98005
T:(425) 404-2399 F: (425) 406-6898

1
2
3
4
5
6

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON<br>IN AND FOR THE COUNTY OF KING

7
8

PATRICK LEONARD TIERNEY;

9
10

                          Plaintiff,

vs.

11
12

CARRINGTON MORTGAGE SERVICES,
LLC, and AZTEC FORECLOSURE
CORPORATION OF WASHINGTON

13
14

                    Defendants.

CASE NO.  20-2-11324-7-SEA

DECLARATION OF PATRICK
LEONARD TIERNEY IN SUPPORT OF
MOTION FOR TEMPORARY
RESTRAINING ORDER

15
16

       I, Patrick Leonard Tierney, declare as follows:

17
18

       1.      I am the plaintiff in this action.  My wife, Chris Tierney, and I purchased the

19

property located at 28023 NE 140th Place NE, Duvall WA 98019 in 1988.  It is my sole residence

20

and I have lived there consistently for the last 32 years.

21

       2.      On March 5, 2004, we refinanced out mortgage with a $208,000 loan from MILA,

22

Inc.  A true and correct copy of the March 5, 2004 Balloon Note is attached as **Exhibit 1** to the

23

Declaration of Erica St. Louis.  The loan was secured by a Deed of Trust, also dated March 5,

24

2004.  A true and correct copy of the March 5, 2004 Deed of Trust is attached as **Exhibit 2** to

25

the Declaration of Erica St. Louis**.**

26

  - 1 DECLARATION OF PATRICK LEONARD
TIERNEY IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER

CREER LEGAL<br>11900 NE FIRST STREET #300G<br>BELLEVUE, WA 98005<br>T:(425) 404-2399 F: (425) 406-6898

3.      At the time of the loan, we were told that the that balloon on the loan was no cause for concern as it would simply be refinanced at the time of maturity.  I never would have agreed to a loan that would put us in a position to lose the home in which we lived since 1988, based upon the inability to come up with a large balloon payment on April 1, 2019.  In fact, it was understood that we almost certainly *eqwf 'pqv* come up with such a balloon payment.  We were not provided with any notice of regarding a right to cancel the loan.

4.      At the time of the MILA loan, I owned and operated a successful custom landscape design and construction firm, Classical Gardens LLC.   My wife, Chris Tierney, worked full time at Phillips, where she earned a modest but reliable salary.  Unfortunately, the 2008 recession had a significant negative impact on Classical Gardens.  In the years that followed, we exhausted our savings in an attempt to hold onto the business.   In 2017, the business was shuttered after several consecutive years of losses.   In November 2017, I took a job as a landscape division manager at Molbaks' Home and Garden.  At that point, it appeared that we were going to be able to keep up with expenses and start to rebuild after the 2008 recession.  Unfortunately, things only got worse over the 18 months that followed.

5.      In May 2018, I was diagnosed with advanced non-Hodgkin's lymphoma which required immediate and aggressive treatment.  The treatment was successful, but resulted in uncovered medical expenses.  In November 2018, Chris received notice that her employment would end as of May 2019, as a result of a Phillips decision to relocate.

6.      Then, in February 2019, I was fired from my job at Molbaks - without any prior notice or warning.   At that point, Chris had yet to find new employment and had only months left in her current position.

DECLARATION OF PATRICK LEONARD
TIERNEY IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER

CREER LEGAL
11900 NE FIRST STREET #300G
BELLEVUE, WA 98005
T:(425) 404-2399 F: (425) 406-6898

7.      In March 2019, I was cutting some trees with a chain saw  – something I have done countless times in my life.    This time, I slipped on wet leaves, causing the saw to fly out of my hands before landing on my right knee.   I was admitted for emergency surgery that evening and spent the following three months in a brace and unable to walk.    I entirely unemployable during this time.

8.      On April 24, 2019, my entire world collapsed when my wife died suddenly in our home.  A true and correct copy of Chris' death certificate is attached hereto as **Exhibit 3.** ″

9.      *Vj tqwi j qwv'lj g'eqwtug'qh'qwt 'o ct tlci g.'Ej tku'j cpf ngf 'cn'cur geu'qh'lj g'hco k'*finances including the payment of all monthly bills.   I had no idea what was owed on the house or who to pay.  I did not even know where the check book was kept.   Copies of old mortgage statements in the house revealed Carrington to be the holder of the first mortgage.′″

10.     Erica St. Louis is a close family friend who happens to be an attorney.  Erica offered to help me sort out the household bills after Chris died.  I was particularly concerned about the mortgage, as my house is all I have left.   Erica began communicating with Carrington, with my permission, in order to get assistance with the mortgage payments.  I thereafter provided Erica will all communications that I received from Carrington and Azetc.   All of the communications with Carrington and Aztec that are exhibits attached to the declaration of Erica St. Louis are true and correct copies of the documents that I provided to her.

11.     I completed a Request for Mortgage Assistance ("RMA") application obtained on the Carrington website and gathered the documents requested in the form.  On May 31, 2019, Erica submitted the completed RMA application to Carrington on my behalf.  A true and correct copy of the May 31, 2019 RMA application along with its fax delivery confirmation are attached hereto as **Exhibit 5.**

 - 3 DECLARATION OF PATRICK LEONARD
TIERNEY IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER

CREER LEGAL
11900 NE FIRST STREET #300G
BELLEVUE, WA 98005
T:(425) 404-2399 F: (425) 406-6898

12.    While I was initially comforted to know that my application was being processed, my comfort soon turned to anxiety and stress.  The letters that I received from Carrington over the last year lead me to believe that there are no live bodies processing RMA applications.

    a.  One notice stated that I elected to dispose of my home with a short sale.  I never made such an election.  I want to stay in my home and do not want to lose it by sale or foreclosure.  I was later told that Carrington claims that Chris made this election on April 3, 2020.  She passed away almost a year prior.

    b.  Another notice stated that "opted out" of the RMA process.  I did not opt out.  I desperately want mortgage assistance and have never told Carrington anything different.

    c.  Although I submitted to Carrington 30 days of computer generated paystubs, per Carrington's request, I then received a notice stating that my RMA was denied on the grounds that I have $0 income.

    d.  On June 7, 2019, I received a letter from Carrington stating my loan was delinquent, that I had the right to apply for mortgage assistance, but that Carrington could offer me such assistance as it been unable to find me.  Not only did Carrington review my original RMA request one week prior to this letter, it had requested (and received) additional documents in support of the request.

    e.  On another occasion, I received a letter from Carrington stating that my RMA application was "cancelled" on the grounds that Carrington did not receive documents that had been provided to them weeks earlier.

- 4 DECLARATION OF PATRICK LEONARD
TIERNEY IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER

CREER LEGAL
11900 NE FIRST STREET #300G
BELLEVUE, WA 98005
T:(425) 404-2399 F: (425) 406-6898

1

2          13.      At no point in this process have I been presented with net present value ("NPV")

3    inputs used in connection with Carrington's denial of my RMA.

4          14.      I want to keep my home.  I am able to post a bond and can deposit the regular

5    monthly mortgage payments with the court clerk.

6

7          I declare, under penalty of perjury, under the laws of the State of Washington, that the

8    foregoing is true and correct.

9

10          DATED this 17th day of July, 2020.

11

12                                          P. Leonard Tierney

13

14                                    By:_____

15                                          Leonard Tierney

16

17

18

19

20

21

22

23

24

25

26

- 5 DECLARATION OF PATRICK LEONARD
TIERNEY IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER

CREER LEGAL
11900 NE FIRST STREET #300G
BELLEVUE, WA 98005
T:(425) 404-2399 F: (425) 406-6898