```
                          FILED
             2020 AUG 13 11:54 AM  HONORABLE MARSHALL FERGUSON
                       KING COUNTY
                   SUPERIOR COURT CLERK
                         E-FILED
               CASE #: 20-2-11324-7 SEA
```

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| PATRICK LEONARD TIERNEY; <br><br> PLAINTIFF, <br><br> VS. <br><br> CARRINGTON MORTGAGE SERVICES, LLC; AZTEC FORECLOSURE CORPORATION OF WASHINGTON; and THE BANK OF NEW YORK MELLON, f/d/a THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED HOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2004-5. <br><br> DEFENDANTS. | CASE NO. 20-2-11324-7-SEA <br><br> FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF |

Plaintiff alleges as follows:

**NATURE OF ACTION**

1. This is an action for damages and injunctive relief and arising out of wrongful conduct in connection with attempts to foreclosure of the plaintiff's property in violation of state and federal law, including: Consumer Protection Act, RCW 19.96 et seq. ("CPA"); Deed of Trust Act, RCW 61.24 et seq. ("DTA"); Truth in Lending Act 12 USC §1601 ("TILA"); Federal Debt Collection Practices Act, 15 USC §1692 et seq. ("FDCPA"); Real Estate Settlement Procedures

FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND DECLARATORY RELIEF - 1

CREER LEGAL
11900 NE FIRST STREET #300G
BELLEVUE, WA 98005
T:(425) 404-2399 F: (425) 406-6898

Act, 12 USC §2605 et seq. ("RESPA"); Fair Credit Reporting Act, 15 USC §1681 et seq. ("FCRA"); and Equal Credit Opportunity Act, 12 USC §1640; ("ECOA").

## PARTIES VENUE AND JURISDICTION

2. Plaintiff Patrick Leonard Tierney ("Tierney") is an individual who resides in King County and owns the property located at 28023 140th Place NE, Duvall Washington. The property is Tierney's sole residence and he has lived there continually and uninterrupted since its purchase in 1988.

3. Defendant Carrington Mortgage Services ("Carrington") is a foreign limited liability company that does business in Washington. Carrington's principal office is located in Anaheim, California. Carrington's agent for service of process is CT Corporation System, 711 Capitol Way South, #204, Olympia, Washington, 98501.

4. Defendant Aztec Foreclosure Corporation of Washington ("Aztec") is a Washington corporation. Aztec's principal office in is Vancouver, Washington. Aztec's agent for service of process is LLC Management Services LLC, 145 Third Ave S, # 200, Edmonds, WA, 98020-3593.

5. Defendant The Bank of New York Mellon, f/k/a The Bank of New York as trustee for registered Holders of CWABS, Inc., Asset-Backed Certificates, Series 2004-5 ("Mellon") is a foreign bank corporation authorized to do business in Washington and maintains an office at 1201 Third Avenue, Suite 5010, Seattle, WA 98101. Mellon's principal office address is 240 Greenwich St, New York, NY, 10286-0001. Mellon's agent for service of process in Washington is CT Corporation System, 711 Capitol Way S Ste 204, Olympia, Washington, 98501.

FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND DECLARATORY RELIEF - 2

CREER LEGAL
11900 NE FIRST STREET #300G
BELLEVUE, WA 98005
T:(425) 404-2399 F: (425) 406-6898

6. This court has original and concurrent jurisdiction over the parties and claims in this action pursuant to RCW 19.86.090; 12 USC §2614; 15 USC §1640; 15 USC §1691e; and 15 USC §1692k. Venue is proper in this court as the plaintiff resides here and the acts complained of took place in King County.

## FACTUAL ALLEGATIONS

### MILA Loan

7. Tierney and his now deceased wife, Chris Tierney ("the Tierneys") purchased property located at 28023 NE 140th Place, Duvall Washington, parcel # 667293-0110-09 as their sole residence. On March 5, 2004, the Tierneys refinanced the mortgage on their home with a $208,000 loan at 6.8% from Mortgage Investment Lending Associates ("MILA"). The loan provided for monthly payments in the amount of $1,356.00 and a balloon payment at maturity on April 1, 2019. The loan was secured by a deed of trust pursuant to which Mortgage Electronic Registration Systems, Inc. ("MERS") was designated as the sole nominee of MILA and beneficiary under the deed of trust.

8. On July 2, 2007, MILA filed a Chapter 11 Voluntary Petition for bankruptcy in the US Bankruptcy Court for the Western District of Washington, Case No. 07-13059-KAO. On August 3, 2011, MERS executed an assignment that purported to assign all interest in the Tierney note and the deed of Trust to Mellon. Thereafter, Carrington acted as servicer on the loan. On June 28, 2012, MILA was dismissed from bankruptcy.

### Financial Crisis and Default

9. In May 2018, Tierney was diagnosed with advanced non-Hodgkin's lymphoma. He underwent immediate and aggressive treatment. While the treatment was successful, it left the Tierneys with uncovered medical expenses. In February 2019, while still in follow-up cancer

care, Tierney was terminated from his employment, without notice or warning. Shortly prior to Tierney's termination, Chris Tierney was advised that her employer was moving out of state and that her position would be eliminated in mid-year. Both commenced the search for new jobs.

10. Tierney's job search efforts were halted in May 2019, when he suffered serious injury to his right knee as a result of a chainsaw accident. He underwent emergency surgery that left him unable to walk for three months. In April 2019, while Tierney was still recovering from the accident and subsequent surgery, Chris Tierney died suddenly. At that point, the Tierneys were two months behind on their mortgage payments.

**Request for Mortgage Assistance**

11. Chris Tierney handled all aspects of the family finances including the payment of all monthly bills. At the time of Chris Tierney's death, Leonard Tierney did not know what was owed on the house, the amount of the monthly mortgage payments or even the identity of the mortgage holders. Copies of old mortgage statements in the house revealed Carrington to be the holder of the first mortgage.

12. On April 30, 2019, Tierney's attorney contacted Carrington, advised of Chris Tierney's death and that Tierney would need for mortgage assistance given the events of the prior year. Carrington requested a copy of the death certificate, which was thereafter provided via fax.

13. Seven days later, on May 7, 2019, Carrington sent Tierney a Notice of Pre-Foreclosure Options. The letter set forth various forms of mortgage assistance, including a mortgage modification. The letter further stated that Tierney had 30 to give notice of his interest in obtaining mortgage assistance and that, if he so elected, he would thereafter have another 60 days to schedule an in-person meeting with Carrington before a Notice of Default would be

FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND DECLARATORY RELIEF - 4

CREER LEGAL
11900 NE FIRST STREET #300G
BELLEVUE, WA 98005
T:(425) 404-2399 F: (425) 406-6898

issued.  On May 14, 2019, Tierney's attorney contacted Carrington by phone and reiterated Tierney's desire to seek mortgage assistance.  The Carrington agent advised that Carrington's Request for Mortgage Assistance ("RMA") application could be found on its website.

14. Regarding mortgage assistance, the Carrington website states:

> Carrington is committed to the dream of homeownership, and we realize that sometimes unforeseen situations can cause financial hardships. These hardships can impact the ability of some homeowners to make monthly mortgage payments. If you need assistance to get back on track, we have a variety of options that may be available to you.

15. Tierney completed the RMA application and submitted it to Carrington on May 31, 2019, along with the requested supporting documentation.  On June 4, 2019, Carrington acknowledged receipt of Tierney's application requested additional documents.  Three days later, on June 7, 2019 Carrington sent Tierney a letter stating that it had received no response to its Notice of Pre-Foreclosure Options and its efforts to contact Tierney had been unsuccessful.  The letter further stated: "It is critical that you contact us immediately so that we can assist you in keeping your home and avoiding foreclosure."

16. On June 24, 2019, Tierney faxed to Carrington the additional documents it requested in connection with his RMA application.  The fax confirmation reveals that the documents were successfully transmitted to the fax number provided by Carrington. Tierney received no objection to the documents provided on June 24 nor was he advised that further documents were required.  One monthly later, on July 24, 2019, Carrington notified Tierney that it had "cancelled" his RMA application on the grounds that it did not receive the documents that Tierney faxed to Carrington, on June 24, 2019.

FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND DECLARATORY RELIEF - 5

CREER LEGAL
11900 NE FIRST STREET #300G
BELLEVUE, WA 98005
T:(425) 404-2399 F: (425) 406-6898

17.     Three and a half weeks later, on August 19, 2019, Carrington, as attorney-in-fact for Mellon executed an assignment that purported to assign to Mellon all of Mellon's right, title and beneficiary interest in the March 4, 2004 note and deed of trust.  On the same day as the assignment, Carrington appointed Aztec as the successor trustee.   The assignment was recorded on August 26, 2019.   The appointment of Aztec as successor trustee was recorded on August 27, 2019.

18.     Ami Bhavsar ("Bhavsar"), Carrington's Supervisor of Pre-Foreclosure Compliance, sign two affidavits on August 19, 2019, along with the assignment and appointment of trustee.  In the first, Bhavsar attested under penalty of perjury that Mellon was the holder of any promissory note secured by the March 5, 2004 deed of trust.   The second was a loss mitigation form in which Bhavsar attested, under penalty of perjury, that Carrington contacted Tierney to explore options to avoid foreclosure, that Tierney responded, but did not request a meeting.

19.     On the same day that Carrington recorded the appointment of Aztec as successor trustee, Tierney found an *undated* document taped to his front door that read:

NOTICE REQUIRED BY THE
FAIR DEBT COLLECTIONS PRACTICES ACT
(15 USC Section 1692 ET. SEQ.)

The following information is provided to you pursuant to the Federal Fair Debt Collections Practices Act.

1. As of August 16, 2019, our client has advised that the amount of the unpaid principal balance is $153,693.34.

2. The creditor to whom the debt is owned is Carrington Mortgage Services, LLC as servicer for The Bank of New York Mellon f/k/a The Bank of New York as trustee for registered Holders of CWABS, Inc., Asset-Backed Certificates, Series 2004-5.

FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND DECLARATORY RELIEF - 6

CREER LEGAL
11900 NE FIRST STREET #300G
BELLEVUE, WA 98005
T:(425) 404-2399 F: (425) 406-6898

3.  The Fair Debt Collection Practices Act entitles you to dispute the debt, or any portion thereof, within thirty (30) days of your receipt of this notice. If you do not dispute the debit within this period, it will be assumed to be valid by this office. . . .

5.  The Fair Debt Collection Practices Act does not require that we wait until thirty (30) days from the date you receive this notice before initiating foreclosure proceedings to foreclose your Deed of Trust/Mortgage.  In the event we do initial foreclosure proceedings to foreclose your Deed of Trust/Mortgage within thirty (30) days from the date you receive this notice, you will still retain the right to dispute the debt, or any portion thereof. . . .

20.  On August 30, 2019, Tierney responded in writing the foregoing undated notice stating that he had already submitted an application for mortgage assistance, that he had submitted all documents requested by Carrington and that he is not willing to waive any of the rights to which he is entitled under the law.  To the extent that Carrington considered his prior RMA "cancelled," Tierney stated his letter should be considered as his formal written request for mortgage assistance.  Tierney sent his letter via U.S. Mail, email and fax.  Carrington did not respond to Tierney's letter of August 30, 2019.  In the three months that followed, Tierney heard nothing from Carrington regarding his RMA.

21.  Because Carrington was ignoring communication from Tierney, on December 3, 2019, Tierney's attorney to Carrington a formal written request for a meeting.  The letter was sent by U.S. Mail, email and fax.  Carrington did not respond to the December 3 letter.  Rather, on December 6, 2019, Carrington taped to Tierney's door a Notice of Foreclosure and Notice of Trustee's Sale, which scheduled a public auction of the home on April 17, 2020.

22.  On December 10, 2019, Carrington sent Tierney notice of what it characterized as an initial loss mitigation application dated December 3, 2019.  On January 11, 2019, Carrington declared the December 3 application as complete.  Two days later, on January 13, 2019,

FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND DECLARATORY RELIEF - 7

CREER LEGAL
11900 NE FIRST STREET #300G
BELLEVUE, WA 98005
T:(425) 404-2399 F: (425) 406-6898

Carrington denied the request for mortgage assistance on the grounds that the loan had matured. The January 13, 2019 denial letter went on to state that Tierney was "conditionally approved" for a home liquidation.

23. Tierney had repeatedly advised Carrington that he wanted to pursue every available option to save his home and he certainly never requested home liquidation. At this point, it was clear to Tierney that Carrington had no intention of reviewing his RMA in good faith and that it was determined to foreclosure on his home. As such, Tierney began investing all options, including a reverse mortgage and legal intervention.

24. Randall Lowell ("Lowell") is a HUD certified housing counselor and agreed to review the facts and circumstances surrounding Carrington's handling of Tierney's request for mortgage assistance and the foreclosure proceeding. Tierney provided Carrington with written authority permitting Carrington to speak directly with Lowell.

25. On April 7, 2020, Carrington sent Tierney a letter which purports to acknowledge that, on April 3, 2020, Tierney requested that Carrington proceed with a "Short Sale and/or Deed-in-Lieu of Foreclosure." Tierney never made such a request, nor would he as he has significant equity in the property – far in excess of the principal due on the Carrington loan.

26. Lowell contacted Carrington and demanded that it produce evidence of Tierney's purposed request for a short sale. Carrington refused. After further pressing a Carrington representative advised Lowell that the request was made by Chris Tierney. Chris Tierney died almost a year prior to her purported request for a short sale.

27. The mystery surrounding Carrington's April 7, 2020 "short sale" letter was further compounded by a separate letter that it sent on the same day. The "second" April 7 letter reads:

FIRST AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF - 8

CREER LEGAL
11900 NE FIRST STREET #300G
BELLEVUE, WA 98005
T:(425) 404-2399 F: (425) 406-6898

> This is a legally required notice. We are sending this notice to you because the mortgage account is delinquent. We want to notify you of possible ways to avoid losing your home.

The mortgage assistance options listed included a repayment plan, a special forbearance and a loan modification.

28. The next day, on April 8, 2020, Carrington sent Leonard yet another letter stating that his most recent RMA application had been denied on the grounds that Tierney had voluntarily "opted out" of the process. At no time did Tierney opt out of the loss mitigation process. To the contrary, Tierney has consistently and continually urged Carrington to work with him to find a resolution short of foreclosure.

29. At this point, Tierney had been given four reasons for the denial of his RMA: 1) Tierney's purported failure to submit all requested documents; 2) Carrington's inability modify a matured loan; 3) Tierney's purported election to proceed with a short sale; and 4) Tierney's purported election to "opted out" of the loss mitigation process. All offered grounds are based upon patently false information.

30. Given countless defects in the response to his May 31, 2019 application and the inaccurate and misleading record it created, Tierney completed a new RMA application and submitted to Carrington along with the supporting documents on April 23, 2020. Carrington acknowledged the application on May 1, 2020 and requested that he provide 30 consecutive days of computer generated pay stubs, by May 16, 2020.

31. On May 8, 2020, Tierney provided Carrington with the requested paystubs. Greyson Taylor ("Taylor"), a Carrington Loss Mitigation Document Specialist thereafter advised Lowell that it could be several weeks before a decision is made.

FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND DECLARATORY RELIEF - 9

CREER LEGAL
11900 NE FIRST STREET #300G
BELLEVUE, WA 98005
T:(425) 404-2399 F: (425) 406-6898

32. During this time, Aztec served Tierney a Notice of Continuance of the foreclosure auction to July 24, 2020. Lowell contacted Inna Zagariya ("Zagariya") Aztec's Vice President, advised that Tierney's April 23, 2020 RMA application was under review and requested a continuance of the foreclosure auction pending such review. Zagariya advised Lowell that the sale had already been postponed.

33. By July 14, 2020, Tierney had yet to receive written confirmation that July 24 auction had been postponed. That morning Lowell called Zagaryia at Aztec seeking confirmation. Lowell was advised that Zagaryia was in a meeting. Lowell requested that she return his call and confirm that the auction had been postponed. Lowell sent Zagaryia a follow up email and requested that she let him know, as soon as possible, so that Tierney could avoid filing a complaint and a motion for a TRO. Zagaryia did not return Lowell's call or email.

34. Unable to reach Zagaryia, Lowell called Carrington seeking confirmation that the foreclosure sale had been postponed, pending the review of Tierney's RMA application. Carrington representative "Jeff" advised Lowell that Carrington denied Tierney's RMA application two months prior, on May 12, 2020, and that the auction was therefore scheduled to go forward on July 24, 2020. Lowell advised that Tierney did not receive a denial letter in May and that he understood that his application was still under review. Jeff advised that the letter was sent via email to Tierney to May 12. Lowell requested a copy of the May 12, 2020 letter. Jeff advised that he was not authorized to release a copy.

35. Over the following two hours, Lowell was transferred numerous times. All agents denied Lowell' request for a copy of the May 12, 2020 denial letter and refused to voluntarily continue the auction. Ultimately, Lowell was transferred to Jesse Reyes ("Reyes"), a specialist in Carrington's loss mitigation department. Lowell explained the circumstances to Reyes –

including Zagariya's prior representation that the auction had been continued and Carrington's failure to provide Tierney with the May 12, 2020 denial letter. Lowell advised Reyes that Tierney would be forced to file suit and seek a TRO if the auction was not continued. Reyes relayed the request to his supervisor who refused to continue the auction. Lowell asked to speak with the supervisory directly. Reyes stated that such was not possible. After numerous requests, Reyes finally agreed to email Lowell the May 12, 2020 letter. Reyes further agreed to email the entire legal team regarding the situation and assured Lowell that someone would be in touch.

36.     By the afternoon, Lowell had not heard back from Zagaryia at Aztec or any member of the legal department at Carrington. He called Carrington again and spoke with representative Tammy. Tammy advised Lowell that Carrington tried 18 times to reach Tierney by phone regarding the May 12, 2020, but its efforts were unsuccessful. Lowell asked why Carrington did not send the denial letter to him Tierney's counsel, both of whom are authorized representatives. Tammy advised that Carrington's policy prohibits employees from contacting a borrower's agent directly, even if authorized in writing, unless it has a cease and desist order from the borrower. Tammy confirmed that the auction remained on calendar for July 24, 2020 and that there was nothing that could be done about it. Lowell asked to speak with her supervisor. Tammy advised that the denial of Tierney's RMA application was made "at the director level," and, therefore, her supervisor could not help. Tammy further advised that "directors don't talk to the public."

37.     That afternoon, Lowell received the email copy of the May 12, 2020 denial letter. The letter stated that its evaluation was based upon a finding that Tierney's gross income was $0 (notwithstanding the paystubs provided on May 8) and that the loan was past maturity. While the letter advised Tierney of his right appeal the decision, the deadline to do so expired 34 days

FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND DECLARATORY RELIEF - 11

CREER LEGAL
11900 NE FIRST STREET #300G
BELLEVUE, WA 98005
T:(425) 404-2399 F: (425) 406-6898

prior, on June 11. Despite the objective evidence of the gross mishandling of Tierney's RMA applications, Carrington and Aztec emphatically refused to continue the July 24, 2020 auction.

38.  Tierney began preparation of the complaint in this action and the ex parte application for a temporary restraining order. On the afternoon of July 16, 2020 (almost three full business days since Lowell's email) Zagaryia responded to Lowell's request for confirmation that the sale had been continued. Zagaryia apologized for the delay and stated that she asked Carrington for permission to continue the auction, that her request was denied and that the auction would therefore proceed on July 24, 2020.

39.  On July 17, 2020 Tierney filed his original complaint in this action, along with an exparte application for a temporary restraining order. A telephonic hearing was held on July 21, 2020, before Commissioner Bradford Moore. Counsel for Carrington and Aztec appeared. After oral argument from all parties, Commission Moore granted Tierney's motion, cancelling the July 24 auction. In support of his order, Commission Moore made the following findings:

> This Court finds that Tierney is entitled to equitable relief based upon evidence presented that the conduct and statements of Defendants lulled Tierney to believe that the July 24, 2020 foreclosure auction had been postponed. On July 15, 2020, Tierney learned for the first time that the auction had not been postponed. By that time, Tierney had no ability to prevent the sale other than by filing the pending ex parte application for injunctive relief. ***Neither Carrington nor Aztec offered evidence or argument in opposition to this finding*** (emphasis added).

### FIRST CAUSE OF ACTION
### Violation of Washington CPA
### (Against all defendants)

40.  Plaintiff repeats, realleges and incorporates herein by reference the allegations of paragraphs 1-39 of this complaint as though set forth at length herein.

41.  The conduct alleged herein was in violation of state and federal law, including the DTA, RESPA, TILA, FDCPA, FCRA, and FCOA. Such conduct constitutes unfair and deceptive acts that impact the public interest.

FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND DECLARATORY RELIEF - 12

CREER LEGAL
11900 NE FIRST STREET #300G
BELLEVUE, WA 98005
T:(425) 404-2399 F: (425) 406-6898

42. As a direct and proximate result of such conduct, Tierney has suffered general and special damages in an amount to established at trial.

## SECTION CAUSE OF ACTION
### Violation of the Real Estate Settlement Procedures Act
### (Against Carrington)

43. Plaintiff repeats, realleges and incorporates herein by reference the allegations of paragraphs 1-39 and 41-42 of this complaint as though set forth at length herein.

44. RESPA and Regulation X impose specific obligations and restrictions on servicers when responding to a borrower's request for mortgage assistance. RESPA further provides that a servicer "shall not fail to take timely action" in response to a borrower's request that seeks to avoid foreclosure. 12 USCA §2605(k). A servicer whose conduct is in violation of RESPA is liable to the borrower for actual and statutory damages.

45. As a direct and proximate result of Carrington's violations of RESPA, Tierney has suffered general and special damages in an amount to established at trial.

## THIRD CAUSE OF ACTION
### Violation of the Fair Debt Collection Practices Act
### (Against Mellon and Carrington)

46. Plaintiff repeats, realleges and incorporates herein by reference the allegations of paragraphs 1-39 and 41-42 of this complaint as though set forth at length herein.

47. Mellon and Carrington are "debt collectors' under the FDCPA. The conduct of Mellon and Carrington alleged herein violated the FDCPA. As a direct and proximate result of such conduct, Tierney has suffered general and special damages in an amount to established at trial.

///

///

FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND DECLARATORY RELIEF - 13

CREER LEGAL
11900 NE FIRST STREET #300G
BELLEVUE, WA 98005
T:(425) 404-2399 F: (425) 406-6898

## FOURTH CAUSE OF ACTION
### Violation of the Truth in Lending Act
(Against Mellon)

48. Plaintiff repeats, realleges and incorporates herein by reference the allegations of paragraphs 1-39 and 41-42 of this complaint as though set forth at length herein.

49. The March 2004 MILA loan was a credit transaction subject to the right of recission under 15 USC §1635 and 12 CFR 1026.23. MILA violated these provisions by failing to provide Tierney with required notices at the time of the loan. Claims for damages under TILA are subject to equitable tolling until such time as the borrower discovers or has reason to discover the violations.

50. As a result of Mellon's violation of TILA, Tierney is entitled to:

(a) Recission of the transaction or, alternatively, a recoupment and offset;

(b) Termination of any security interest in the property that was created under the transaction;

(c) Forfeiture and return of the loan proceeds; and

(d) Statutory damages in the amount of $4,000 per incident for the disclosure violations.

## FIFTH CAUSE OF ACTION
### Violation of Equal Credit Opportunity Act
(Against Mellon and Carrington)

51. Plaintiff repeats, realleges and incorporates herein by reference the allegations of paragraphs 1-39 and 41-42 of this complaint as though set forth at length herein.

52. The ECOA imposes obligations and restrictions creditors when extending credit, including a duty to provide written notice of the specific reasons for adverse action taken against an applicant for credit. By submitting an application for mortgage assistance, Tierney was an

FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND DECLARATORY RELIEF - 14

CREER LEGAL
11900 NE FIRST STREET #300G
BELLEVUE, WA 98005
T:(425) 404-2399 F: (425) 406-6898

applicant for credit under the ECOA.  The conduct of Mellon and Carrington in connection with the review and processing of Tierney's RMA application was in violation of the ECOA.

53. As a direct and proximate result of the wrongful conduct of Mellon and Carrington, Tierney has suffered general and special damages in an amount to established at the time of trial.

### SIXTH CAUSE OF ACTION
### Negligence
(Against all Defendants)

54. Plaintiff repeats, realleges and incorporates herein by reference the allegations of paragraphs 1-39 and 41-42 of this complaint as though set forth at length herein.

55. Defendants have a duty to use reasonable care when assessing a borrower's mortgage assistance options and to make a good faith attempt to avoid foreclosure.  Defendants breached these duties by taking affirmative action that undermined Tierney's RMA in order to force his home into foreclosure.

56. As a direct and proximate result of wrongful acts of the defendants, Tierney has suffered general and special damages in an amount to be established at trial.

### SEVENTH CAUSE OF ACTION
### Declaratory and Injunctive Relief
(Against all Defendants)

57. Plaintiff repeats, realleges and incorporates herein by reference the allegations of paragraphs 1-39 and 41-42 of this complaint as though set forth at length herein.

58. A controversy exists regarding the rights and obligations of the parties under the MILA note and deed of trust which requires a judicial declaration and/or a permanent injunction prohibiting defendants from exercising rights under the March 2004 deed of trust.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND DECLARATORY RELIEF - 15

CREER LEGAL
11900 NE FIRST STREET #300G
BELLEVUE, WA 98005
T:(425) 404-2399 F: (425) 406-6898

1. A permanent injunction precluding defendants from foreclosing on the March 2004 deed of trust and precluding defendants from attempting to sell the Duvall property;
2. Declaration that the defendants' security interest in the subject property is void;
3. Declaration of the rights and obligations of the parties under the March 5, 2004 MILA note and deed of trust;
4. Recission of the March 2004 transaction or, alternatively, recoupment and offset
5. Judgment in favor of Tierney and against all defendants in all claims asserted against them in this action;
6. An award of general and special damages, in an amount to be proven at trial;
7. An award of punitive damages, treble damages and statutory penalties as permitted by law;
8. An award of attorneys' fees and costs as permitted law, including but not limited to RCW 19.86.090; 12 USC §2605; 12 USC §2607; 15 USC §1691e; 15 USC §1692k; and 12 USC §1681n.
9. An award of pre-judgment interest; and
10. All such further relief as the court deems just and proper.

Dated: August 13, 2020                CREER LEGAL

By: _____
Erica A. St. Louis
WSBA # 28793
Counsel for Platiniff

FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND DECLARATORY RELIEF - 16

CREER LEGAL
11900 NE First Street #300G
Bellevue, WA 98005
T:(425) 404-2399 F: (425) 406-6898