1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PATRICK LEONARD TIERNEY,

           Plaintiff,

           v.

CARRINGTON MORTGAGE SERVICES,
LLC, et al.,

           Defendants.

Case No. C20-1245RSM

ORDER RE: MOTIONS FOR SUMMARY
JUDGMENT

## I.      INTRODUCTION

This matter comes before the Court on Defendants Carrington Mortgage Services, LLC ("Carrington") and Bank of New York Mellon ("BONY")'s Motion for Summary Judgment, Dkt. #33, Defendant Aztec Foreclosure Corporation of Washington ("Aztec")'s Motion for Summary Judgment, Dkt. #34, and Plaintiff's Motion for Summary Judgment, Dkt. #40.  The Court has determined it can rule without oral argument.  For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART Defendants' Motions.

## II.      BACKGROUND

The Court sets forth the following factual background necessary for ruling on these Motions.  On March 5, 2004, Plaintiff Tierney and his now deceased wife refinanced their mortgage with a promissory note in the amount of $208,000.00 ("Note") and a deed of trust

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 1

("Deed of Trust"), which secured the Note (the Note and the Deed of Trust are hereinafter referred to collectively as "the Loan"), and created a first priority lien against the real property commonly known as 28023 Northeast 140th Place, Duvall, WA 98019 ("Property").  Dkt. #4 at 80-96.  The Deed of Trust lists Christy A. Tierney and Patrick L. Tierney, wife and husband, as the grantor and Mortgage Electronic Registration Systems, Inc. ("MERS"), solely as nominee for MILA, Inc., and its successors and assigns, as the beneficiary.  *Id*.

The interest in the Deed of Trust was thereafter assigned to The Bank of New York Mellon f/k/a The Bank of New York as Trustee for Registered Holders of CWABS, Inc., Asset-Backed Certificate Series 2004-5, as evidenced by an assignment recorded on August 5, 2011. Dkt. #4 at 97.

In August of 2017, the servicing of the Loan was transferred to Defendant Carrington. Dkt. #36 ("Carrington Decl."), ¶8.  The Loan was not in default at the time of the transfer to Carrington.  *Id*. at ¶ 43.  A letter to the Tierneys, informing them of the change, provided the following methods for submitting "Notices of Error, Information Requests, and Qualified Written Requests": by fax to 800-486-5134, or by mail to P.O. Box 5001, Westfield, IN 46074. Carrington Decl., Ex 3 at 3.  This address is different than the address borrowers were to send mortgage payments. The monthly billing statements sent to the Plaintiff also contained this information for where to submit correspondence related to notices of error, information requests, and QWRs. Carrington Decl. at ¶45, Ex. 30.

The Tierneys faced a financial crisis in early 2019 due to Mr. Tierney's medical expenses.  Dkt. #1-6 at 3–4.  Then Mr. Tierney's wife died suddenly in April of 2019.  *Id.* at 4. Plaintiff defaulted on the Loan by failing to make the payment scheduled for March 1, 2019, and all subsequent payments.  Dkt. #4 at 137.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 2

On May 31, 2019, Defendant Carrington received a Request for Mortgage Assistance from Mr. Tierney.  Carrington Decl. at ¶16.  Carrington concluded that the application was missing certain documents and sent a letter on June 4, 2019, requesting additional documents no later than June 19, 2019.  *Id.* at ¶ 17, Ex. 10.  On June 22, Carrington sent a follow up letter, asking Mr. Tierney to submit the requested documents by July 7, 2019.  *Id.* at ¶ 18, Ex 11.

Carrington argues that it received some, but not all, of the requested documents on June 24, 2019.  *Id.* at ¶19, Ex 12.  Specifically, Carrington states that Mr. Tierney failed to provide "completed pages 3 and 4 of the Request for Mortgage Assistance Form and… 2018 tax returns." Dkt. #33 at 3.

On July 24, 2019, Carrington cancelled the review process and sent a Cancellation Notification to Mr. Tierney.  Carrington Decl. at ¶ 20, Ex. 13. Carrington did not review Plaintiff's account to determine whether the account qualified for any loss mitigation alternatives under the guidelines of Plaintiff's investor, BONY. Carrington Decl. at ¶ 21.

On September 5, 2019, Carrington received another request for mortgage assistance from Mr. Tierney.  Carrington Decl. at ¶24, Ex. 15.  Carrington again requested additional documents.  *Id.* at ¶ 26.  Carrington argues that Mr. Tierney again failed to provide the requested documents and canceled the review process.  *Id.* at ¶ 27.

Following issuance of the July 24, 2019, Cancellation Notice, Carrington referred Plaintiff's loan file to Aztec Foreclosure Corporation ("Aztec") for commencement of non-judicial foreclosure proceedings and, in turn, on October 25, 2019, Aztec issued a Notice of Default.  Dkt. #4 at 136–141; Carrington Decl. at ¶23.

On or about December 3, 2019, Carrington received a third Request for Mortgage Assistance. Carrington Decl. ¶28, Ex. 18.  Carrington acknowledged its receipt on December 9,

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 3

2019, and requested Mr. Tierney provide additional documents by December 24, 2019. Carrington Decl. at ¶29.

On December 9, 2019 Aztec nevertheless recorded a Notice of Trustee's Sale ("NOTS"), setting a sale date of April 17, 2020. *Id.* at 148–153.

On January 11, 2020, despite receiving no further documents, Carrington deemed Plaintiff's application package to be sufficiently complete and submitted it to an underwriter for review "on the merits", *i.e.*, to determine whether Plaintiff qualified for any loss mitigation alternatives under BONY's investor guidelines.   Carrington Decl. at ¶30. Following that review, Carrington determined that Plaintiff's account was not eligible for any home retention options (such as loan modification or forbearance plan) because BONY did not offer such options for loan accounts that had reached their maturity date with a balloon payment. *Id*. at ¶32. As a result, Carrington notified Plaintiff on January 13, 2020, that the only option available to Plaintiff was to sell the property.  *Id.*

Throughout the spring of 2020, Mr. Tierney contacted Carrington by phone and other means to continue to attempt loan modifications that would allow him to keep his home.  None of these attempts were successful.  *See* Dkt. #33 at 5–6.

The trustee's sale was postponed to June 19, 2020, and then again to July 24, 2020. Dkt #11-2, ¶1.

On July 17, 2020, Plaintiff filed his complaint with a Motion for Temporary Restraining Order. Dkt. #11-1. The complaint alleged claims for Violation of the Washington Consumer Protection Act, Breach of Fiduciary Duty, and Negligence.  Dkt. #1-5.

On August 13, 2020, Plaintiff filed his Amended Complaint adding several new claims for violation of the Real Estate Settlement Procedures Act, the Fair Debt Collections Practices

Act, the Truth in Lending Act, and the Equal Credit Opportunity Act. *See* Dkt. #1-6. He also added a claim for declaratory and injunctive relief to prevent Defendants from exercising their rights under the 2004 Deed of Trust. *Id.*

Defendants removed on August 18, 2020. Dkt. # 1. On March 18, 2021, the Court dismissed Plaintiff's claims for violation of the Truth in Lending Act and the Equal Credit Opportunity Act. Dkt. #27. The instant Motions followed.

### III.     LEGAL ANALYSIS

**A. Legal Standard for Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B.  Claim for Declaratory and Injunctive Relief**

In the Amended Complaint, Mr. Tierney alleges there is a present controversy over the rights and obligations of the parties under the note and deed of trust, requiring judicial review. Dkt. #1-6 at ¶58.  In briefing, Mr. Tierney spends many pages detailing an improper assignment of his loan and an alleged coverup by Defendants, with allegations of forgery, criminal profiteering, money laundering, and perjury.

"[A] borrower generally lacks standing to challenge the assignment of its loan documents unless the borrower shows that it is at a genuine risk of paying the same debt twice." *Hummel v. Nw. Tr. Servs.*, Inc., 180 F. Supp. 3d 798, 806 (W.D. Wash. 2016), *aff'd*, 740 F. app'x 142 (9th Cir. 2018) (citing *Andrews v. Countrywide Bank*, NA, 95 F.Supp.3d 1298, 1302 (W.D. Wash. 2015).  Borrowers, as third parties to an assignment, cannot challenge the chain of assignments.  *Borowski v. BNC Mortg., Inc.*, No. C12-5867RJB, 2013 U.S. Dist. LEXIS 122104, 2013 WL 4522253, at *5 (W.D. Wash. Aug. 27, 2013).

Defendants Carrington and BONY argue:

> Here the Plaintiff has not alleged and cannot establish that more than one party is trying to collect from him concurrently. Dkt #1-5, 55-70, generally. Nor has he indicated that he is even concerned that multiple parties could collect from him on the same debt. *Id*.

> Finally, there is no reference to this loan in the MILA bankruptcy filing. Dkt. No. 4-1. Plaintiff did not and cannot offer any evidence showing that this loan was an asset of MILA at the time of its bankruptcy filing in 2007. As such, there is no evidence that the assignment from MERS to BONY was in violation of MILA's bankruptcy. Simply put, there is no controversy here, BONY holds the Note and Plaintiff lacks standing to challenge the assignment to BONY. All of Plaintiff's contentions and arguments to the contrary are both, factually unsupported and legally incorrect.

Dkt. #33 at 13.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 6

The Court generally agrees with Defendants' analysis. Mr. Tierney has failed to demonstrate he is at a genuine risk of paying the same debt twice and therefore lacks standing to sue on this claim. *See Hummel*, *supra*. The Court finds it inappropriate to weigh in on accusations of criminal activity in this civil matter. Dismissal of this claim is warranted as a matter of law, and these same allegations cannot serve as a basis for Mr. Tierney's CPA claim, discussed below.

## C. Real Estate Settlement Procedures Act Claim

Mr. Tierney alleges that Carrington violated the Real Estate Settlement Procedures Act ("RESPA") and Regulation X by failing to take timely action in response to his request to avoid foreclosure. Dkt. #1-6 at ¶ 44. Mr. Tierney has previously argued that Carrington violated RESPA by failing to respond to written requests for information or inquiry regarding the account, *see* 12 USC §2605(e); 12 CFR §§1024.31, 1024.35 & 1024.36, by engaging in "dual tracking," *see* 12 USC §2605(e) and (k); 12 CFR §1024.41(g), and by manufacturing grounds for denial of Mr. Tierney's RMA application. *See* Dkt. #12 at 11–15 (citing, *e.g.*, 12 CFR §1024.38(b)(2)). Defendants move for summary judgment on this claim.

12 U.S.C. §2605(1)(B) defines a qualified written request as a written correspondence that includes a statement of the reasons for the belief of the borrower that the account is in error or provides sufficient detail regarding information sought by the borrower. Under 12 CFR § 1024.35(c), "[a] servicer may, by written notice provided to a borrower, establish an address that a borrower must use to submit a notice of error…" The same is true of a request for information. 12 CFR § 1024.36(b).

In his previous motion for preliminary injunction, Mr. Tierney set forth evidence of Carrington's failure to comply with regulation X when responding to his QWRs. Dkt. #12 at

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 7

11–13.  In opposition to the preliminary injunction motion, Carrington argued that the communications were technically requests for mortgage assistance and not QWRs.  Dkt. #18 at 9.  The Court disagreed and found that Tierney submitted evidence indicating a likelihood of success on the merits with respect to Carrington's response to the QWRs.  Dkt. #28 at 6–7.  Rather than offering evidence of compliance with regulation X, Carrington now argues that Mr. Tierney's inquires do not meet the definition of QWRs because they were mailed to the wrong address and that therefore Carrington was relieved of the response obligations under RESPA.  Dkt. #33 at 14 (citing *Lucero v. Cenlar FSB*, 2015 U.S. Dist. LEXIS 112629, *6, 2015 WL 5024047 (W.D. Wash. 2015) ("If a communication does not satisfy all of the requirements of a QWR, including receipt at the designated address, it amounts to nothing more than general correspondence between a borrower and servicer and does not trigger potential liability under the statute.").

Carrington points to the Notice of Servicing Transfer letter it sent to Tierney on August 25, 2017, as well as a "you are behind on your mortgage payment" notice sent to the Plaintiff on April 11, 2019, as well as the cancellation notice sent on July 24, 2019, *see* Carrington Decl. at ¶46, Ex.7 & 13.  These letters specifically mention where to send QWRs.

In Response, Mr. Tierney states "a review of these letters reveal that they contain no mention of QWRs or even notices of error, generally."  Dkt. #48 at 10.

However, the Court has reviewed these letters and finds that Mr. Tierney's counsel is just plain wrong.  The Notice of Servicing Transfer letter *explicitly* states that QWRs were to be sent to a different address than payments.  It uses the Term Qualified Written Request "QWR".  Plaintiff's counsel cites to pages 1 and 2 of the letter, as attached by Carrington, but ignores page 3, cited by defense counsel.  This one mention of where to send QWRs might not be

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 8

dispositive, as it would be understandable that such correspondence could get lost prior to Mr. Tierney's need to send a QWR.  However, as Carrington points out, the letters of April 11, 2019, and July 24, 2019, explicitly state where to send "QWRs" on a third page called "Important Disclosures."  In any event, it appears to the Court that the monthly billing statements explicitly state where to submit QWR correspondence.  Carrington Decl. ¶45 Ex. 30 at 3 ("Notices of Error, Requests for Information and Qualified Written Requests (as defined in RESPA) must be sent to: PO Box 5001…").  Mr. Tierney's counsel does not address this point. If there was some argument under equity to get around this requirement, it is not made by Plaintiff's counsel.  Taking all of the above into consideration, the Court finds as a matter of law that Carrington cannot be liable under RESPA for failing to respond to written requests for information or inquiry regarding the account.

Carrington goes on to argue it did not engage in "dual tracking."  RESPA prohibits commencing foreclosure while a complete loss mitigation application is under review. 12 CFR 1024.41(3)(i)(D)(1).  However, requests for loss mitigation that are incomplete do not trigger the dual tracking provisions of RESPA.  *Id*.  The parties disagree on whether Mr. Tierney's loss mitigation application(s) were incomplete, or whether Carrington was using this as a ruse to deny loss mitigation relief and avoid liability under RESPA.  It is undisputed that Carrington received a request for mortgage assistance on December 3, 2019, but went ahead and issued a notice of trustee's sale six days later.  Viewing the evidence and drawing inferences in the light most favorable to the non-moving party, the Court concludes that a genuine dispute as to material facts precludes summary judgment for Defendants on this claim.

Finally, Carrington argues for dismissal of any claim under 12 CFR § 1024.38. Carrington argues "there is no private right of action to enforce § 1024.38."  Dkt. # 33 at 19

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 9

(citing, *e.g.*, *Joussett v. Bank of America, N.A.*, 2016 U.S. Dist. LEXIS 138912, *15, 2016 WL 5848845 (E.D. Pa. October 6, 2016)).  Mr. Tierney does not address this point in his Response. This claim is properly dismissed as a matter of law.

### D.  Fair Debt Collection Practices Act Claim

The Fair Debt Collection Practices Act ("FDCPA") was enacted to combat abusive debt collection practices. 15 U.S.C. § 1692. An FDCPA claim must allege facts demonstrating the false or misleading representations made by the debt collector and unfair practices used in attempt to collect the debt. 15 U.S.C. § 1692(e), (f).

To establish a violation of the FDCPA, a plaintiff must demonstrate the following elements: (1) the plaintiff is a consumer; (2) the debt arises out of a transaction entered into for personal purposes; (3) the defendant is a debt collector; and (4) the defendant violated one of the provisions of the FDCPA.  *Smith v. Bank of New York Mellon*, No. C19-0538-JCC, 2019 WL 2994695, at *4 (W.D. Wash. July 9, 2019).

The FDCPA defines "debt collector" as any person who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 USC § 1692a(6). The term explicitly does not include any employee of a creditor acting in the name of the creditor.  § 1692a(6)(A).  The term explicitly does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity… concerns a debt which was not in default at the time it was obtained by such person."  § 1692a(6)(F).  A creditor is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."  § 1692a(4).

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 10

1
2
3
4
5
6
7

Defendants argue that BONY is a creditor, not a debt collector, and that Carrington received an assignment of the debt before it was in default and is therefore excluded under § 1692a(6)(F).  Plaintiff does not adequately address either of these points.  The Court agrees with Defendants and finds that FDCPA claims cannot be brought against any of these Defendants as Plaintiff has failed to demonstrate they are debt collectors, a requirement for FDCPA claims. This claim is properly dismissed as a matter of law.

8

**E.  Washington Consumer Protection Act Claim**

9
10
11
12
13
14
15

In order to state a claim for relief under the CPA, a plaintiff must allege facts sufficient to meet each of the following elements: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation.  *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780, 719 P.2d 531 (1986); *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash.2d 27, 204 P.3d 885, 889 (2009).

16
17
18
19
20
21
22
23
24

Mr. Tierney argues Defendant Carrington committed a per se violation of the CPA by violating RESPA. *See Bain v. Metropolitan Mortg. Group, Inc.*, 175 Wn.2d 83, 118 (2012); *Brown v. Washington State Dept. of Commerce*, 184 Wn.2d 509, 531, n.12 (2015); *Trujillo v. Northwest Trustee Services, Inc.*, 183 Wn.2d 820 (2015); *McDonald v. OneWest Bank*, 929 F.Supp.2d 1079 (2013).   Typically, this would mean the CPA claim survives. However, Defendants argue that the claim should still be dismissed for failure to satisfy the injury element.

25
26
27
28

In response, Mr. Tierney argues that the conduct of the defendants precluded him from taking action in lieu of foreclosure that would have preserved his equity in the property.  Mr. Tierney argues, without evidence and for the first time, that "he could have obtained a reverse

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 11

1  mortgage had he received timely notice of the RMA denial." Dkt. #48 at 15.  He argues that he

2  was wrongfully denied a "favorable" loan modification and that this can constitute injury under

3  the CPA.  *Id*. (citing *Frias v. Asset Foreclosure Services, Inc.*, 181 Wn.2d 412, 431-32 (2014)).

4  He asserts that Aztec added fees to the loan in connection with the foreclosure, and that this can

5  constitute an injury under the CPA.  *Id*.  He points to the notice of foreclosure as causing a

6  "diminution in Tierney's property interests" without evidence.  He argues he had to pay for

7  gasoline and postage related to filing this case.  *Id*. at 16.  Again, no citation to evidence.

8

9          On Reply, Carrington and BONY argue Mr. Tierney has never been able to demonstrate

10 that his income was sufficient to qualify for a modification.  Dkt. #50 at 10.  They argue that

11 Plaintiff has failed to provide documentation supporting damages in discovery.  *Id*. at 10–11.

12 Defendants go on to state:

13

> In his deposition, aside from claiming emotional damages caused
> by stress and anxiety to which he states he never sought treatment
> for, Plaintiff did not attest to any other damages. Dkt. #38, Ex 6.
> Indeed, he specifically indicated that he had no other damages. *Id*.
> For the first time in his Response, Plaintiff is now claiming
> damages based on improper fees, diminution of value, travel, and
> postage, *none of which have been supported by any evidence
> whatsoever*. Edwards Decl. ¶1-2. None of these damages are
> claimed in the operative complaint. [*See generally,* FAC.] As
> discussed above, Plaintiff cannot defeat Defendants' MSJ by
> raising these new issues in the Response.

21 *Id*. at 11 (emphasis in original).

22

23         The Court is just as frustrated as Defendants, and agrees with their summary of the

24 situation.  In response to a motion for summary judgment, the nonmoving party must make a

25 "sufficient showing on an essential element of her case with respect to which she has the

26 burden of proof" to survive summary judgment.  *Celotex, supra*.  Mr. Tierney points to several

27

28

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 12

sources of potential injury but has failed to make a sufficient showing, with citation to evidence, for any of this.  Accordingly, the Court must dismiss this claim as a matter of law.

## F. Negligence

Defendant Aztec moves to dismiss Mr. Tierney's sixth cause of action for negligence.

Mr. Tierney's negligence claim is just a couple of sentences and relies on allegations previously made in the pleading.  He claims that Defendants have a general duty to use reasonable care when assessing a borrower's mortgage assistance options and to make good faith attempts to avoid foreclosure, and that defendants breached these duties by taking affirmative action that undermined Tierney's request for modification in order to force his home into foreclosure.  Dkt. #1-5 at ¶ 55.  The claim does not mention the Deed of Trust Act ("DTA").

Aztec argues that it is "fatal to Mr. Tierney' claim …that defendant Aztec, as a neutral third party, has no duty to assess Mr. Tierney's mortgage assistance options." Dkt. #34 at 7. Aztec also argues that Mr. Tierney has suffered no injury, an essential element of any negligence claim, because there has been no foreclosure and he has suffered no out of pocket loss.  *Id*. at 10–11 (citing excerpts of Plaintiff's deposition).

In response, Mr. Tierney argues that Aztec had a duty to "equally protect the rights of the borrower and the investor" under the DTA, a duty to make its own independent decision regarding continuance of the auction, and a duty to confirm the identity of the noteholder.  Dkt. #48 at 12–13.[1]  Mr. Tierney suggests he can pursue his negligence claim absent a foreclosure by claiming emotional distress damages.  *Id*. at 16.  He does not substantiate such an injury with a citation to evidence.

---

[1] Mr. Tierney also inexplicably and incorrectly states to the Court that "[n]one of the defendants seek summary judgment on the negligence claim." Dkt. #48 at 3.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 13

On reply, Aztec points out that under Washington law "there can be no cause of action for monetary damages under the DTA based on DTA violations absent a completed foreclosure sale." Dkt. #51 at 8 (citing *Frias*, 181 Wn.2d at 429).

The Court finds that Aztec has correctly stated the law on this issue. Mr. Tierney points to the DTA as the sole source of Aztec's duty, but because there has not been a foreclosure he cannot pursue a cause of action for violations of that statute. Mr. Tierney has also failed to make a substantial showing as to damages as to any Defendant, an essential element of this claim, and that this alone warrants summary judgment dismissal.

**G. Plaintiff's Motion for Summary Judgment**

The Court has reviewed Plaintiff's Motion for Summary Judgment, Dkt. #40, and finds it can be denied given the above rulings. Mr. Tierney presents no evidence that Defendants are debt collectors, that the above RESPA claims should not be dismissed (other than the dual tracking claim), or that he suffered injury satisfying the requirements of a CPA or negligence claim. Mr. Tierney fails to establish dual tracking as a matter of law, and the Court continues to conclude there is a genuine dispute as to material fact for this issue. Mr. Tierney does raise several other sources of RESPA violation for the first time (failure to implement information management system, failure to implement quality controls, failure to train, and failure to assign dedicated personnel). Many of these are violations of § 1024.38, a claim dismissed by the Court above. A failure to assign dedicated personnel claim under § 1024.40 also fails because there is no private right of action under that regulation. *See* Dkt. #45 at 17. The Court finds that summary judgment in Plaintiff's favor is not warranted for any of these claims.

//

//

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 14

### IV.   CONCLUSION

Having considered the briefing from the parties and the remainder of the record, the Court hereby finds and ORDERS:

1) Defendants' Motions for Summary Judgment, Dkts. #33 and #34, are GRANTED IN PART and DENIED IN PART as stated above.

2) The following claims are DISMISSED: First Cause of Action (Violation of Washington CPA), Third Cause of Action (Violation of FDCPA), Sixth Cause of Action (Negligence), and Seventh Cause of Action (Declaratory and Injunctive Relief).  Plaintiff's RESPA claim against Defendant Carrington survives as stated above.  No claims against Defendants BONY or Aztec remain.

3) Plaintiff's Motion for Summary Judgment, Dkt. #40, is DENIED.

DATED this 12th day of November, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 15